P. J. WILLIS & BRO. ET AL. V. R. J. L. MORRIS ET AL.

(Case No. 2052.)

1. IMPROVEMENTS—WHEN A PART OF FREEHOLD—FACT CASE.—The owners of a tract of land, which was of very little value, erected a building upon it in which they placed valuable machinery, and attached it to the building with a view to carrying on a permanent business. *Held*, as between a defendant in execution and a purchase at sheriff's sale, the machinery would be deemed a part of the freehold. (Moody v. Aikin, 50 Tex., 65; Hutchings v. Masterson, 46 Tex., 551.)

2. REALTY—TRESPASS—MEASURE OF DAMAGES.—When the owner of realty is dispossessed by a trespasser he can not treat the property as belonging to the wrong doer and recover its value, as in case of personal property; but he must sue

for the specific property, and may recover the value of the rents and all damages resulting in legal contemplation from the trespass. In estimating these damages, the general rule is that the defendant is only answerable for the natural, ordinary and reasonable consequences of his conduct. (Suth. on Damages., 57.)

3. SAME—FACT CASE.—A tract of land, with a factory and machinery located thereon, was sold under execution, and purchased by the plaintiffs in execution; they continued to operate the factory through defendants in execution as their employes and agents until it was destroyed by fire. Defendants in execution, claiming the property as exempt from forced sale, sued for the land and the value of the factory, etc. *Held*:

(1) Assuming that the property was exempt, if the burning of the factory and its contents was caused by negligence on the part of plaintiffs in execution after they took possession, then, as a new wrong and intervening cause, it rendered them liable.

(2) Unless the destruction was caused directly and immediately by their acts, or was the result of a series of causes and effects, proceeding one from the other, and not speculatively inferred, but established by evidence, as other facts re required to be proved, plaintiffs in execution were not liable for the loss sustained. (Porter v. Miller, 7 Tex., 468, reviewed.)

4. CHARGE—EVIDENCE—PRACTICE.—In a suit for the recovery of land, it is error to charge the jury that they may find rent for plaintiffs, when no evidence has been introduced to show the rental value of the premises. (Blanton v. Mayes, 58 Tex., 422, etc.)

5. MECHANICS' TOOLS—EXEMPTION—ABANDONMENT OF TRADE.—In analogy to the rule laid down in Miller v. Menke, 56 Tex., 539; McDonald v. Campbell, 57 Tex., 614, etc., when a mechanic abandons his trade his tools are no longer exempt from execution. See opinion for acts held not to constitute abandonment of a trade.

6. HOMESTEAD—LIMITATIONS—CONSTITUTION OF 1876—The constitution of 1876 places only two limitations upon property exempt as a place of business; it shall not exceed $5,000 in value when designated as a homestead, and it shall be used as a place to exercise the calling or business of the head of the family.

7. SAME—IMPROVEMENTS.—Neither the value of the improvements placed upon it, nor the nature and extent of the operations carried on there, will subject it to forced sale; and all machinery annexed to the freehold, so as to become a part of the realty, becomes exempt as part of the homestead.

8. REVISED STATUTES, ARTICLE 2335—TOOLS OF TRADE—APPARATUS—The phrase "tools of trade" used in Article 2335 Revised Statutes, applies only to simple instruments used by hand. The word " apparatus " has a wider meaning, and embraces such minor machinery as may be operated by hand, and such as has been held not to be included under the term "tools," as used in similar enactments. (Buckingham *v.* Billings, 13 Mass , 82; Lallee *v.* Waters, 17 Ala., 482.)

APPEAL from Anderson. Tried below before the Hon. F. A. Williams.

The opinion states the facts.

*W. Q. & F. Reeves*, for appellants, on the refusal of the court to give the special charge requested, cited: Seale *v.* Railway Company, 65 Tex.,

274; Porter v. Miller, 7 Tex., 468; Pait v. McCutchen, 43 Tex., 312; Sedg., on Damages, 82; Suth., on Damages, 18, 19, 20, 21, 22.

As to a charge given without evidence to support it, they cited: Blanton v. Mays, 58 Tex., 422; Austin v. Talk, 20 Tex., 164; Lee v. Hamilton, 12 Tex., 413.

*Gammage & Gregg*, for appellees, on improvements, cited: R. S., Arts. 2335-2336; Freeman on Ex., sec. 226; Thomp., on Homestead, sec. 216; Sweringen v. Bassett, 65 Tex., 267.

On tools of trade, they also cited: Kilburn v. Demming, 21 Am. Dec., 554; Healy v. Bateman, 60 Am. Dec., 95.

GAINES, ASSOCIATE JUSTICE.—Appellees, Morris and Ragsdale, and one R. V. Simpson, composing the firm of Morris, Ragsdale & Simpson, mechanics and machinists, and being the owners of the lots sued for in this action, erected thereon a house with machinery and tools for the manufacture of cotton gins, etc. At one time all of them worked in the factory; but about the month of January, 1883, having established a general mercantile business, Simpson took charge of this business and gave it his principal attention. Morris superintended the factory and worked in it; and Ragsdale traveled in the interest of the firm, and when not so engaged, also worked in the factory. Appellants, P. J. Willis & Bro. and Mensing, Stratton & Co., having respectively obtained judgments against the firm of Morris, Ragsdale and Simpson, caused executions to be issued thereon, and levied upon the lots in controversy, the machinery, tools, etc., therein situated, besides other property not involved in this suit. The sheriff took actual possession of the personal property levied upon, and of the buildings placed upon the lots. The machinery, tools, etc., were sold by the sheriff on December 14, 1883, and the lots on the first Tuesday in January, 1884, appellants being the purchasers in both cases. After the sales, all of the property went into the possession of appellants, who employed appellees Morris and Ragsdale, and L. V. Simpson, to operate the factory until the material on hand could be worked up. Morris was made superintendent, and the other two were to bestow their labor as mechanics in carrying on the work of the factory. Under this arrangement the factory was worked until the month of June, 1884, when it, and its contents, were destroyed by a fire, the cause of which was unknown. At the time of the levy of the executions upon the property, each member of the firm was a resident citizen of Anderson county, and the head of a family.

Simpson died before the institution of this suit, which is brought by

his heirs, and Morris and Ragsdale, to recover the lots upon which the factory was located, and damages for the seizue and destruction of the buildings, machinery and tools found upon the lots, upon the ground that all of the property named was exempt from forced sale. The jury returned a verdict for the plaintiffs for the lots and for $6,250 damages, which evidently embraced the value of the entire property upon the lots, which was claimed by them as exempt, and probably rent of the premises.

The seventh assignment of error, which is the first relied upon in the brief of counsel, is as follows:

The court erred in declining to give first special charge requested by defendants, which is as follows: "It is admitted by plaintiffs and defendants that the factory, machinery, and other property in controversy in this suit was purchased by said defendants at an execution sale in favor of said defendants, Willis & Bro. If you find from the testimony that at the time of and prior to said sale, defendants had notice that Morris, Ragsdale & Simpson claimed said property as exempt and not subject to execution, and if you should find that said property was exempt, and should also find that said Morris, Ragsdale & Simpson, after the sale of said property, took charge of said factory and other property as agents or superintendents of defendants, and operated and conducted said factory, having control, charge and possession thereof, and that during said time said factory, machinery and other property was injured or destroyed by fire without the negligence or want of care on the part of defendants, then the said defendants would not be liable for such injury or destruction."

The point is, whether or not appellees had the right to recover the value of the property destroyed by fire. This is a momentous question to the parties to the suit. The value of this property is the bulk of the matter in controversy. A proper solution may depend, in some degree, upon the decision of the further question, what part of this was real and what part was personal property. Morris, Ragsdale & Simpson (the manufacturing firm) were the owners of the lots in controversy, and it is to be inferred from the record that they erected the building and placed the machinery in it, with a view to carry on a permanent business. The machinery was attached to the building.

The record shows that after the destruction of the factory, the lots were worth only $75.00. These facts clearly indicate that the intention of the owners was to make the machinery a permanent accession to the realty, and that the land was of no material value for any other purpose. Under this state of case, as between a defendant in execution and a purchaser at sheriff's sale, this property would be deemed

a part of the freehold. Moody v. Aikin, 50 Tex., 65; Hutchins v. Masterson, 46 Tex., 551.

Conceding, then, for the present, for the sake of the argument, that the lots were the homestead of the members of the firm, and exempt from forced sale, the question recurs, can appellants be held liable for the entire value of the realty at the time they took possession, and if not, can they be charged in damages for the loss of that which was destroyed by fire? In case of personal property wrongfully seized, the owner may treat it as belonging to the wrong-doer, and recover its value at the time of the tort. But as to real estate, no such rule prevails. When the owner of realty is dispossessed by a tres- passer he must sue for the specific property, and may recover the value of the rents and all damages resulting in legal contemplation from the trespass. What are these damages? "The general rule is that the de- fendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct." 1 Suth. on Damages, 57. The rule is thus stated both in Field on Damages, 591, and Eg- gleston on Damages, 124. Quoting from Pollock, C. B., in Rigby v. Hewitt, 5 Exch., 243: "Every person who does a wrong is at least re- sponsible for all the mischievous consequences that may reasonably be expected to result under ordinary circumstances from such misconduct." Now, can it be said that the destruction of the property in this case was the natural, ordinary and reasonable consequence of its being taken possession of by appellants? Certainly not. If it had been shown that the burning of the house and its contents was the result of their negligence after they took possession, then this, as a new wrong and intervening cause, would have rendered them liable. Not only is there an absence of any evidence tending to this conclusion, but, on the contrary, it appears that appellees themselves were put in charge of the property by appellants to operate the factory as they had pre- viously done, and under the arrangement were in actual charge and control of it when the destruction occurred. Under the circumstances, if negligence could be imputed to any one, it would be to them. The cause of the fire is unknown, and certainly it is not known that appel- lants' conduct in any manner contributed to it.

Reasoning metaphysically, it might be argued that appellants' con- duct in dispossessing the owners, broke the chain of successive events in relation to the property, changed its surroundings and set in operation a new series of causes and effects; and that in the absence of proof that the loss proceeded from some extraneous cause, such as the act of God or an incendiary, it must be deemed the consequence of the change of the possession of the property. But as a legal argument

this is not sound. To render appellants liable for the loss, the destruction of the property must have been caused directly and immediately by their acts, or must be the result of a series of causes and effects, proceeding one from the other, and not speculatively inferred, but established by evidence, as other facts are required to be proved.

The case of Porter *v.* Miller, 7 Tex., 468, cited both by counsel for appellants and those for appellees, is not a decision upon the point before us. It is there held, that when suit is brought for the specific recovery of a slave, and the slave dies pending the suit, "then if the possession of the defendant be inequitable and unconscientious, acquired, for instance, in violation of a trust, or by force, violence or fraud," he should be held liable for the value of the property at all events. On the other hand the court say, "if he hold by title acquired in good faith, if his claim be not destitute of equity, or have probable foundation in law, if it be conscientious, he cannot be treated as a willful wrong-doer, not relievable even as against the act of providence." We know of no decision which authorizes a suit for the value of real estate, upon possession being wrongfully taken. In case of personal property, if the owner so elect, he may, in the first instance, recover its value at the time of the conversion, irrespective of what may subsequently become of it.

It is not necessary, therefore, for us to determine in this case, whether in the event this property was exempt, appellants were holding it by title acquired in good faith or in bad faith, according to the rule in the case last cited. For the reasons stated, we think the court erred in refusing the charge asked by appellants.

The ninth assignment of error is to the effect, that the court erred in charging the jury, that they might find rent for the plaintiffs, there being no evidence of the rental value of the premises. We find no evidence upon the point in the record, and the assignment is well taken, (Andrews *v.* Smithwick, 20 Tex., 111; Austin *v.* Talk, *Id.*, 164; Blanton *v.* Mayes, 58 Tex., 422.) The error cannot be cured by a remittitur in this court, it being impossible to determine whether the jury allowed rent or not, and if so, how much.

It is also assigned as error that "the verdict of the jury is against the evidence, because Morris, Ragsdale & Simpson had, at the time of the levy, abandoned their trade as mechanics, etc."

The evidence does not justify us in saying that Morris and Ragsdale had abandoned their trade as mechanics at the date of the levy. Morris superintended the factory and worked in it. Ragsdale also worked in it when not traveling in the interest of the firm, and we infer from the evidence they worked as mechanics, that is to say, with tools and

their own hands. This would entitle them to the exemption of the tools of their trade. Parkerson v. Wightman, 4 Strob. So. Ca., 363.

As to Simpson, the case is different. He had ceased altogether to work at his trade, and at the time of the levy was giving his time and attention to the mercantile business of the firm. There is no evidence that the arrangement was temporary, and he must be held to have permanently abandoned his trade. A lot in a town or city occupied as a place of business by the head of a family, ceases to be exempt when the business is abandoned. Bowman v. Watson, 6 Law Rev., 314; Shryock v. Latimer, 57 Tex., 674; Miller v. Menke, 56 Tex., 539; McDonald v. Campbell, 57 Tex., 614.

In analogy to this rule, we think that when a mechanic abandons his trade his tools are no longer exempt from execution.

The twenty-second assignment of error submits this proposition: That "the verdict of the jury is contrary to the law and the evidence in this, viz: It is manifest from the evidence that Morris, Ragsdale & Simpson, as manufacturers of gins, etc., had in their employment many persons, and large and expensive machinery. Such place of business was not, in legal contemplation, the place of business for the head of a family, nor was such machinery, tools or apparatus of trade, and therefore not exempt."

The only limitations placed in the constitution of 1876, upon a homestead of the character under consideration, are, that it is not to exceed in value $5,000 at the time of its designation as a homestead, and that it shall be used as a place to exercise the calling or business of the head of a family. Neither the value of the improvements placed upon it, nor the nature and extent of the operations carried on there, will subject it to forced sale, and all the machinery annexed to the freehold in such manner and under such circumstances as to become a part of the realty, would follow the title of the freehold and be exempt with it as parts of the homestead. Expensive and complicated machinery propelled by steam power, or any power other than hand, is not exempt as "tools of trade," the latter phrase being held to apply only to simple instruments used by hand. Thompson's Homestead and Exemptions, sec. 756.

The word "apparatus" used in the statute may take a wider range and embrace such minor machinery as may be operated by hand, and such as courts of high authority have held not to be included under the term "tools" as used in similar enactments. Buckingham v. Billings, 13 Mass., 82; Sallee v. Waters, 17 Ala., 482.

There are other questions raised in the record which are not likely to arise upon a new trial, and need not be discussed.

For the errors pointed out, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 5, 1886.]