Because of the refusal of the trial court to allow the appellant 2 days'. time as required by law after the service of the copy of the indictment, the judgment is reversed, and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

## LOPEZ v. NAEGELIN et ux.
### No. 2356.

Court of Civil Appeals of Texas. Beaumont.
April 27, 1933.

Chas. T. Haltom, of San Antonio, for appellant.

M. D. Jones, of San Antonio, for appellees.

WALKER, Chief Justice.

This suit was instituted in county court at law No. 1, Bexar county, by appellees, Frank Naegelin and wife, against appellant. Mrs. Sarah N. Lopez, a widow, to recover $221 due by appellant to appellees as rent. After filing their suit appellees sued out a distress warrant against appellant and seized the following described property as being subject to their landlord's lien, to secure the payment of their debt: "1 Mixing machine; 1 wall table; 1 bread mixer; 1 steam box, 1 counter, 5 counter stools; 1 bread safe and counter, 1 oven top; 1 oven rack; 1 gas range; about 15 feet of pipe; 1 cake beater; all parts that belong to baking oven and dough mixer; 1 show case, 2 feet by 5 feet; 1 double deck, 2 feet by 3 feet show case; 1 screened show case for cookies; 2 large counters; 1 glassed-in show case 3 feet by 5 feet; 1 dish rack partition wall movable; 1 large top of baker's oven; 1 show case about 3 feet by 9 feet; 2 sides of baking oven (porcelain) 1 front end of baking oven; 3 small tables about 3½ feet by 4 feet; 70 bread pans; 1 mixing bowl; 8 white stool chairs; 1 electric motor; 8.feet of 1 inch gas pipe; 1 large dough mixing bowl; and 1 large cake pan." Appellant admitted the justness of the debt sued for, but claimed the seized property as exempt to her under articles 3832 and 3835, R. S. 1925, exempting from execution for debt "all tools, apparatus and books belonging to any trade or profession." The judgment was in favor of appellees upon an instructed verdict. The appeal was prosecuted to the San Antonio Court of Civil Appeals, transferred to the Austin Court, then to this court, by orders of the Supreme Court. The only point made by appellant is that, under the evidence, the court should have sent to the jury, under appropriate instructions, her claim that the property was exempt to her.

The facts of this claim are as follows: All this property was situated in the leased premises during the time it was held and occupied by appellant, under her contract with appellees. This contract was in writing, and among other provisions authorized appellees, in the event appellant defaulted in her rent payments, "to distrain for any rents that may be due thereon upon any property belonging to the party of the second part (appellant)." Appellant was the head of a family, with two small children. She testified through an interpreter as follows:

"I rented the premises on South Flores

Street from Mr. & Mrs. Naegelin. I moved away from there in May 27, 1931. At the time I moved away from there I owed $221.20. I had some property taken in charge by an officer right after I moved away. All this property belonged to me. I am a baker by trade. I have been in the bakery business going on two years. I am a single woman and have two children. I have household and kitchen furniture. All the equipment and property that was taken by the officer was pertaining to the business of the bakery, everything belonged to the bakery. I had no restaurant.

"I rented the south side of this building to a man named Gonzales in the months of February and March but he had no sink and he moved out. Everything that he brought in there he took away with him. All the equipment that was levied upon belonged to the bakery. Mr. Gonzales used the stools and counter in the restaurant business there, there were three tables. They were mine. I lived in the inside rooms, the bakery is in the front. I never had any restaurant but I had three little tables and some chairs. Five stools were attached to the floor. The long counter was left in its original position. I had twelve chairs.

"I never had a restaurant but I had three tables and the chairs. Mr. Wagner was there about a month."

"It is agreed that the following is a description of the two main items of the property levied upon by the constable, to-wit:

"An oven that stands on iron legs 9½ inches high. The oven is 61 inches high, and at its widest width it is 61 inches, and at its smallest width it is 39 inches. It is 82 inches in length. There is attached to the oven proper, about three inches above the oven, a metallic roof, which is a steam or heat holder. This roof is 12 inches in height, 82 inches in length, and 56 inches in width; and it is attached by metallic bands holding it above the oven. The oven has a capacity of 96 ordinary square loaves of bread at one cooking. The oven has a revolving compartment inside, which is moved by electrical power, and the heat for the cooking is by gas.

"The mixer is 61 inches in height, including the motor on top, and is 42 inches in width, including the vessel in which things are mixed. The mixer has a capacity of 20 quarts.

"The oven and the mixer, besides other things, have been moved to different premises. They have been in use by the bakery for the last three years. The oven is capable of being operated by hand power."

"There is a little piece missing from the motor for the oven and you have to move it by hand, and when there is no electric current, you turn it by hand. I have turned it by hand many times. I did that Saturday and to-day, I made bread that way. I ran that business by myself, I got up about 2 o'clock every day, 2 or 3 o'clock in the morning, and at 9 o'clock at night I retired. I am selling about 20 or 25 loaves of bread. I have a very small plant and am selling very little now.

"I do not cook the full capacity of the oven. Sure, I need the oven in my business. I make pies and cakes, every kind.

"As to needing the mixer in my business, I worry myself by trying to use it by hand, we had the machine out of order and I had to operate it by hand, it was too much.

"The machinery was intended to be operated by electric power, but it is out of order and I am running it by hand until I can get some money in order to fix it up."

There was other testimony to the effect that some of the property listed above was used in connection with a restaurant that occupied part of the leased premises.

## Opinion.

■ That appellant, by the written contract, authorized appellees "to distrain for any rents" upon any property belonging to her did not authorize appellees to seize this property by virtue of the contract. In other words, this contract did not give appellees a contractual mortgage against appellant's property.

■ There is no merit in appellees' counter proposition that appellant had no right to a jury submission of her defense because she did not designate, among the articles seized, the specific articles claimed by her to be exempt. She claimed that all the articles seized were used by her as tools or apparatus belonging to her trade as a baker. Appellees raised the issue against this contention that all of the seized property, except the oven and mixer, constituted a part of the restaurant equipment which was operated in the leased premises. This statement presents an issue of fact. If the seized articles constituted part of the restaurant equipment, then they were not exempt. Simmang v. Penn. Fire Ins. Co., 102 Tex. 39, 112 S. W. 1044, 132 Am. St. Rep. 846. But there is a broad distinction between the trade of a "baker" and the business of operating a "restaurant." No specific tools are required to operate a restaurant, nor is the keeper of a restaurant required to serve an apprenticeship, while a baker is required to learn his trade and special tools or apparatus are designed for his use, such as the oven and mixer in controversy herein. Every article claimed by appellant was used by her personally, as she testified, in the operation of her bakery, and she personally did all the work. It seems to us that this statement brings appellant's claim within the clear language of the statute exempting tools and apparatus "belonging to any trade." In re Petersen (D. C.) 95 F. 417, 418, the following tools or equipment of

the bankrupt baker were held to be exempt under the California statute, exempting "the tools or implements of a mechanic or artisan necessary to carry on his trade": 50 bread pans, 4 bread peals, 45 dozen molds for bread and cakes, 30 bread boxes, 2 long benches, 1 square bench, 1 square table, 2 triangles for mixing dough, 4 bowie knives, 1 table knife, 2 sieves, 1 lot ornamenting tools, 2 bread scales with weights, 3 scrapers, 2 trainers, 2 yeast barrels, 2 big stone jugs, 40 bread boards, 3 wooden bowls, 3 rolling pins, 2 doughnut kettles with grates. In Harris v. Haynes, 30 Mich. 140, the court held exempt "certain tinner's tools and machines." In Harris v. Townley (Tex. Civ. App.) 161 S. W. 5, 6, the court held exempt 1 six-column Quarto County Campbell press, 1 typewriter, certain type and type cases, one desk, iron safe, together with a certain gasoline engine used for the operation of said press, as well as other furniture and fixtures belonging thereto. In Green v. Raymond, 58 Tex. 80, 44 Am. Rep. 601, the court held exempt a printing press and cases used in the printing office and owned by the editor and publisher. In Hinckley-Tandy Leather Co. v. Hazelwood (Tex. Civ. App.) 35 S.W.(2d) 209, 211, the court held exempt one Progressive Finishing Machine, an article sometimes used in shoe and harness shops as a convenience in polishing and finishing shoes and harness, for the purpose of giving said articles worked upon a more pleasing and attractive appearance before delivering to the customer.

■ The fact that a part of appellant's baking machinery was operated by electricity did not render such machinery subject to execution. In Harris v. Townley the court said: "We think it is immaterial that the press in this case was not run by hand but by this gasoline engine." In the last case cited (Hinckley-Tandy Leather Co. v. Hazelwood) it was said: "Certainly to hold that the test of exemption of any tool or apparatus belonging to a trade is to be whether or not it is run by hand or by other power would be entirely out of keeping with the policy of liberal construction and warranted by nothing in the statute itself. It will be unnecessary to comment upon the authorities which we think expressly or in principle sustain this view. We merely cite the following: Betz v. Maier, 12 Tex. Civ. App. 219, 33 S. W. 710; St. Louis Type Foundry v. Taylor (Tex. Civ. App.) 35 S. W. 691; Campbell v. Honaker's Heirs (Tex. Civ. App.) 166 S. W. 74; Haris v. Todd (Tex. Civ. App.) 158 S. W. 1189; Mueller v. Richardson, 82 Tex. 361, 18 S. W. 693; St. Louis Type Foundry v. International Live-Stock, etc., Co., 74 Tex. 651, 12 S. W. 842, 15 Am. St. Rep. 870; Fore v. Cooper (Tex. Civ. App.) 34 S. W. 341." This case also cites and distinguishes on the proposition just discussed the opinion by the Supreme Court in Willis v. Morris, 66 Tex. 628, 1 S. W. 799, 59 Am. Rep. 634.

It follows that the judgment of the lower court should be reversed, and the cause remanded for a new trial, and it is accordingly so ordered.

Reversed and remanded.