## McMILLAN v. DEAN, Sheriff, et al.
### No. 9408.

Court of Civil Appeals of Texas. Austin.
Oct. 20, 1943.

Rehearing Denied Nov. 3, 1943.

738

J. Mitch Johnson, of San Saba, and Wilkinson, Johnson, Griffin, & Bohannon, of Brownwood, for appellant.

Allen, Helm, & Jacobs, of Houston, and C. K. Ford, of San Saba, for appellees.

BLAIR, Justice.

Appellees, Mrs. Mary Elizabeth Gage and her five children, recovered a final judgment for $3,215, with interest thereon, as damages for injuries resulting in the death of their son and brother when he was run over by a truck and trailer belonging to appellant, C. H. McMillan. Appellees caused a writ of execution to be issued and levied upon four certain large trucks with large trailers attached to each of them belonging to appellant, which were to be sold at sheriff's sale in satisfaction of the judgment. Appellant filed this suit against appellees and the sheriff for a temporary injunction, to be made permanent on final hearing, to enjoin them from selling the trucks and trailers, claiming that three of the specifically described trucks. and trailers. were exempt from forced sale to him as the head of the family, under Subdivision 5 of Art. 3832 of our statutes, Vernon's Ann.Civ.St. art. 3832, subd. 5, which reserves "to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts * * * all tools, apparatus and books belonging to any trade or profession"; and claiming that the remaining specifically described truck and trailer were exempt to him under Subdivision 9 of the same statute, in lieu of "two horses and one wagon," as therein provided.

The trial court held that the three trucks and trailers claimed to be exempt from forced sale as tools or apparatus belonging to any trade or business were not so, and denied the injunction restraining their sale; but held that the truck and trailer claimed to be exempt from forced sale as or in lieu of two horses and one wagon were so, and enjoined the sale of them. Appellant has appealed on supersedeas bond from the judgment refusing to enjoin the sale of the three trucks and trailers sought to be exempted as tools or apparatus of trade or business; and appellees have appealed from the judgment enjoining the sale of the truck and trailer held to be exempt in lieu of two horses and one wagon. This statement of the case presents the questions to be determined.

Appellant and his wife compose the family. He used the four trucks and trailers under permits issued by the Railroad Commission of Texas and the Interstate Commerce Commission in carrying on the business of hauling or transporting for hire cattle, livestock, wool, mohair, and feed. Appellant was also engaged in the business of operating two sets of race horse starter gates, which he and his employees operated during the racing season in several states. These gates assembled were about 42 feet long and weighed about 15,000 pounds. He hauled them from one state and from one race track to another on the truck which he claimed to be exempt in lieu of two horses and one wagon. In 1942 he received about $7,000 gross revenue from the gate starter business, netting about $900 revenue to him. His estimated revenue from the trucking business was about $2,000 each three months. When he was away operating his gate starter business, his trucking business was operated by a manager who had been employed seven or eight years on an annual salary basis. When he was at home he managed his trucking business and the manager aided him and drove one of the trucks. Appellant also drove one of the trucks when he could not employ drivers for all of them. He used from three to seven drivers and employees in his trucking business. The livelihood for himself and wife came from the two aforementioned businesses, the greater part coming from the trucking business, which he had operated and built up since 1929.

The truck claimed to be exempt as or in lieu of two horses and one wagon weighed

3,800 pounds and was suitable for hauling any kind of load, and the trailer attached was 25 feet long. The three remaining trucks weighed from 3,800 to 4,500 pounds, and all trucks were from 12 to 14 feet long. Each trailer had four wheels, three of them were 25 feet and one 30 feet long, and weighed from 9,500 to 11,000 pounds. The permits issued by the state and federal authorities covered each truck and trailer attached thereto as one unit, and each was ordinarily so operated, although the trailers could be detached and the trucks alone could be used for the hauling or transporting business.

Under the foregoing facts the trial court correctly construed Subdivisions 5 and 9 of Art. 3832 as regards each appeal presented, and we accordingly affirm its judgment as to each appeal. No useful purpose can be served by a lengthy review of the numerous cases that have arisen under these two subdivisions of the statute. Suffice it to say that no case has been cited or found supporting the claim of appellant McMillan that the three large and expensive motor propelled trucks and trailers are exempt from forced sale for debt under Subdivision 5, as tools or apparatus belonging to the trade or business of hauling or transporting merchandise for hire.

In the first place, the trial court took the position that since appellant elected to claim one truck and trailer to be exempt as or in lieu of two horses and one wagon under Subdivision 9, he could not then classify the remaining three trucks and trailers as tools or apparatus of his trade or business of hauling merchandise for hire under Subdivision 5. To so construe these two separate subdivisions of the statute would result in the exemption of what is equivalent to eight horses and four wagons, whereas Subdivision 9 only reserves two horses and one wagon. That such was not the intention of the Legislature is manifest from these and similar statutes.

Subdivision 5 of Art. 3832 reserves to the family from forced sale for debt "all tools, apparatus and books belonging to any trade or profession"; and Subdivision 3 of Art. 3835, by identical language, reserves the same property to the individual from forced sale for debt. Subdivision 9 of Art. 3832 reserves to the family from forced sale "two horses and one wagon," and Subdivision 4 of Art. 3835 reserves to the individual from forced sale "one horse, saddle and bridle."

These statutes each has the important provision, applicable to the family and to the individual alike, which reserves "all tools, apparatus and books belonging to any trade or profession," and each has a provision for exemptions of horses, wagon or saddle, etc., to the family and to the individual. From these statutes it is manifest that the Legislature intended to provide that Subdivision 5 and Subdivision 9 should apply to different things or property. If this were not so, there would have been no need for making the separate provisions. So, if a truck and trailer may under modern conditions be exempt as or in lieu of two horses and a wagon, or of a wagon, then it is clear the statute only intended to exempt one of them. It was not intended by the Legislature to exempt three more trucks and trailers by merely calling them tools or apparatus of trade or business. If a truck and trailer take the place of a wagon and team as elected by appellant, then he would not be entitled to exempt three more wagons and teams, or either, as tools or apparatus of trade. From the earliest time it has been held that a horse used in cutting hay with a mower by one whose business was that of a mower of hay was not exempt from forced sale for debt as his tools or apparatus of trade. Tucker v. Napier, 1 White & W. Civ.Cas. Ct.App., § 670. Likewise, it has been held that a single man who used a horse, buggy and harness in carrying on his insurance agency business was not entitled to have them exempted as being tools and apparatus belonging to his trade or profession. Cates v. McClure, 27 Tex.Civ.App. 459, 66 S.W. 224, error refused. A bicycle was held not to be a tool or apparatus of trade when used by an architect going to and from his work. Smith v. Horton, 19 Tex.Civ. App. 28, 46 S.W. 401, error refused, 92 Tex. 21, 46 S.W. 627.

In the second place, the trial court also correctly concluded that the three large and expensive motor propelled trucks and trailers were not "tools or apparatus belonging to a trade" within the meaning of that term as used in Subdivision 5. It is true that this term or language is general in nature and must be liberally construed to effectuate the purpose of the statute, but the exemption does not extend to articles or things useful to a trade or profession. The statute includes only such tools or ap-

paratus as belong to a trade or profession, and does not include things that might be beneficial to the carrying on of any trade or profession.

■■ The phrase "tools of trade" has been held to apply only to such instruments as are used by hand, and as not comprehending expensive and complicated machinery propelled by power other than hand. Willis v. Morris, 66 Tex. 628, 629, 1 S.W. 799, 803, 59 Am.Rep. 634. The word "apparatus" as used in the statute has been held to be practically synonymous with the word "tools"; but that it may take a wider scope and may include such minor machinery and such as may be operated by hand, and such as is not included under the term "tools of trade." The word "apparatus," however, is not understood, as used in the statute, to designate large and complicated machinery. Willis v. Morris, supra; Hinckley, etc., Co. v. Hazelwood, Tex.Civ. App., 35 S.W.2d 209; Comer v. Powell, Tex.Civ.App., 189 S.W. 88; Peyton v. Farmers' Natl. Bank, 5 Cir., 261 F. 326. In consequence, our courts have accordingly held that mill and gin machinery, a well-drilling rig, and a threshing outfit are not exempt as tools or apparatus of trade. Cullers v. James, 66 Tex. 494, 1 S.W. 314; Thresher v. McEvoy, Tex.Civ.App., 193 S.W. 159; Comer v. Powell, supra. And while means of rapid travel may be necessary in modern time to prosecute a trade or profession, the courts have generally held that a bicycle used by an architect, a buggy and horse used by an insurance agent, a horse, and an automobile are not tools or apparatus of a trade or business. In addition to the Tucker and Cates cases, supra, see Hammond v. Pickett, Tex.Civ. App., 158 S.W. 174. Likewise, have the courts held that the icebox and cash register of a butcher; the soda fountain of one in the confectionery business; and the furniture and fixtures of a restaurant-keeper are not exempt as tools or apparatus of trade, although the decision of the Supreme Court was reluctantly followed as to the icebox of a butcher, as applied to the icebox of a restaurant-keeper as not being exempt as a tool or apparatus of a trade or business in Hammond v. McFarland, Tex.Civ.App., 161 S.W. 47, writ dismissed, 106 Tex. 579, 173 S.W. 645. See, also, Campbell v. Honaker's Heirs, Tex.Civ.App., 166 S.W. 74, reluctantly following Simmang v. Pennsylvania Fire Ins. Co., 102 Tex. 39, 112 S.W. 1044, 132 Am.St.Rep. 846, holding that a refrigerator used by a restaurant-keeper not to be exempt.

It is true that some recent decisions of the Courts of Civil Appeals seem to hold that the fact that the machinery or instrument is not run by hand is not the sole test of the exemption of any such equipment. Hinckley, etc., Co. v. Hazelwood, supra. But these decisions cannot and do not modify the often cited decision of the Supreme Court in Willis v. Morris, supra, holding that expensive and complicated machinery propelled by power other than by hand is not a "tool of trade" under the statute involved; and further that "the word 'apparatus' used in the statute may take a wider range, and embrace such minor machinery as may be operated by hand, such as courts of high authority have held not to be included under the term 'tools,' as used in similar enactments."

■■ It is also true that the courts have in accordance with our statutory (Art. 10) policy and the general policy of liberal construction of exemption statutes, given the general meaning to the term "trade" in preference to a restricted meaning. We think, however, that the language of the Supreme Court in Willis v. Morris, supra, clearly shows that the court did not intend to apply the statute to general commercial pursuits, which require no particular skill in the use of "tools or apparatus of any trade or profession." Perhaps the best statement of this construction of our statute is found in 18 Tex.Jur. 840, footnote 12, stating the holding In re Willis, D.C., 292 F. 872, as being in substance "that the word 'trade' is not used in its broadest signification as a verb, which includes all sorts of bartering and exchanging of commodities, or commerce generally; nor does it comprehend commercial pursuits which do not require some particular skill." Under this rule it must be held that the three large and complicated motor propelled trucks and trailers are not exempt as tools or apparatus of the trade or business of transporting merchandise for hire.

Viewed from a practical standpoint, we think that there is nothing in the language of the statute which would exempt the three large trucks and trailers employed in hauling or transporting merchandise for hire as tools or apparatus of trade. If these three trucks are exempt, then there is nothing in the statute which would limit the number of trucks so exempt. Hundreds of them would, under appellant's claim, be

exempt. Likewise would large and expensive ships or trains of the head of a family or individual be exempt as tools or apparatus of such trades or businesses. Such would be the inevitable result of the claim of exemption asserted by appellant, which we do not sustain.

The trial court correctly held that the one truck and trailer claimed by appellant were exempted from forced sale for debt under Subdivision 9, which exempts to the family "two horses and one wagon."

See Stichter v. Southwest Natl. Bank, Tex.Civ.App., 258 S.W. 223, and Malone v. Kennedy, Tex.Civ.App., 272 S.W. 509, in which case it is held that a motor-truck is of the same character and serves the same purpose of a wagon, and is held to be exempt from forced sale under Subdivision 9. In so holding the court reasoned that in providing this exemption the Legislature evidently had in mind the use or purpose to which the vehicle is put, rather then the specific character of the vehicle named in the statute. This is the only case found directly in point.

The judgments of the trial court are affirmed.

Affirmed.