**In re Freddy M. LEGG and Nancy R. Legg, Debtors.**

**Bankruptcy No. 593–50636–7.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Feb. 16, 1994.

Louis M. (Mickey) Ratliff, Jr., Littlefield, TX, for debtors.

Floyd D. Holder, Jr., Law Firm of Floyd D. Holder, Lubbock, TX, for trustee.

### MEMORANDUM OF OPINION ON EXEMPTIONS

JOHN C. AKARD, Bankruptcy Judge.

The issue before the court is whether various items of equipment constitute tools or equipment of the Debtors' trade, which they may exempt under Texas law. The court finds that the items may be claimed as exempt.[1]

1.  This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and

## FACTS

Freddy M. Legg and Nancy R. Legg (Debtors) filed for relief under Chapter 7 of the Bankruptcy Code on October 27, 1993. Floyd D. Holder, Jr., the Trustee-in-Bankruptcy, filed objections to their claimed exemptions. The Trustee's objections are cured, except for the following items:

1985 Caterpillar 950B Front–End Loader (loader)

1976 Mack truck (truck)

Motorola radios and repeater (radios)

Radio tower located on leased land (radio tower)

1982 Triangle K flatbed trailer (trailer)

There are liens against some of those items. The Trustee agrees that the Debtors' equity in them, together with their equity in other personal property which they have claimed as exempt, does not exceed the $60,000 valuation limit on exempt personal property allowed to a family under TEX.PROP.CODE ANN. § 42.001(a)(1) (Vernon Supp.1994). The Debtors assert that these items may be included as part of their exempt property under TEX.PROP.CODE ANN. § 42.002(a)(4) (Vernon Supp.1994), which allows them to exempt "tools, equipment, books, and apparatus, including boats and motor vehicles used in a trade or profession."

For approximately 16 years, Mr. Legg's occupation has been in what he referred to as the "fertilizer business." He contracts with cattle feed lots to purchase manure and resells it to farmers as fertilizer. He uses the loader to collect the manure and load it into trucks.[2] The Debtors' radios are installed in the trucks. Mr. Legg drives the loader, and he has a radio installed in it so he can direct the drivers to the proper field for unloading the manure. Testimony showed that some farmers like to use manure in their farming operations, while others prefer to use chemical fertilizers. Those who use chemical fertilizers become very upset if manure is accidently dumped on their land. The loader is not licensed to travel on highways. Mr. Legg uses the truck and trailer to move the loader from one feed lot to another.

In order to operate the radios, Mr. Legg has a one-half interest in the radio tower which he claims as exempt. The tower is located on leased land. Mr. Legg has his own antenna affixed to the tower. The other half interest in the tower is owned by a farmer, who has installed his antenna on the tower as well. The farmer uses his radio to contact his field personnel.

## ISSUE

The Trustee asserts that the Texas exemption statute, although it reads rather broadly, has been interpreted by Texas courts to require that equipment claimed as exempt under its aegis be peculiarly adapted to a debtor's business. He notes that the loader can be used in any number of businesses, including construction, that the truck and trailer can be used to haul any number of different types of items, and that the radio and tower can be used in various businesses, including farming. The Debtors assert that this equipment is necessary for them to operate their business. They point out that they have operated this business for 16 years and, therefore, it is not something they started shortly prior to bankruptcy in order to expand their exemptions.

## DISCUSSION

■ Over the years, the exemption for tools of the trade has undergone substantial change, expansion, and modernization. The exemption, as it existed in 1943, provided that there would be exempt to every family "all tools, apparatus, and books belonging to any trade or profession." *McMillan v. Dean*, 174 S.W.2d 737, 738 (Tex.Civ.App.— Austin 1943, writ ref'd w.o.m.). The court said:

The phrase "tools of trade" has been held to apply only to such instruments as are

Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B).

2. The evidence is not clear on ownership of the trucks. Apparently, the drivers, who contract their services to Mr. Legg, own them.

used by hand, and as not comprehending expensive and complicated machinery propelled by power other than hand.... The word "apparatus" as used in the statute has been held to be practically synonymous with the word "tools"; but that it may take a wider scope and may include such minor machinery and such as may be operated by hand, and such as is not included under the term "tools of the trade." The word "apparatus," however, is not understood, as used in the statute, to designate large and complicated machinery.

*Id.* at 740 (citations omitted). The court quotes with approval 18 Tex.Jur. 840, footnote 12 which states:

[T]hat the word "trade" is not used in its broadest signification as a verb, which includes all sorts of bartering and exchanging of commodities, or commerce generally; nor does it comprehend commercial pursuits which do not require some particular skill.

*Id.* at 740 (citation omitted). The court acknowledged that exemption laws were to be liberally construed, but noted:

It is true that this term or language is general in nature and must be liberally construed to effectuate the purpose of the statute, but the exemption does not extend to articles or things useful to a trade or profession. The statute includes only such tools or apparatus as belong to a trade or profession, and does not include things that might be beneficial to the person carrying on of any trade or profession.

*Id.* at 739–40. Following these precepts, the court denied an exemption of three tractor-trailer trucks claimed as tools of the trade. The court also pointed out that there was no limit on exempt items and if the three trucks were exempt, then there was nothing in the statute which would limit the number of trucks so exempt.

The *McMillan* Court determined that the legislature evidently had in mind the use or purpose to which the vehicle was put rather than the specific character of the vehicle named in the statute. *Id.* at 741. It allowed the debtor to claim as exempt one truck and one trailer in lieu of the statutory "two horses and one wagon."

In 1973, the Texas Legislature amended the statute. One bankruptcy court commented on the changes, as follows:

The determinative factor is the 1973 revision of the statute which made several important changes in the old exemption provisions. The current statute provides: "Personal property (not to exceed an aggregate fair market value of ... $30,000 for a family) is exempt ... if included among the following: (2) all of the following which are reasonably necessary for the family ... tools, equipment, apparatus (including a boat) ... used in any trade or profession...." Foremost among these changes, there is now a monetary limit on the personal property exemption allowed to a debtor whereas no limit was imposed under the repealed [statute].

*England v. First Nat'l Bank (In re England),* 22 B.R. 389, 391 (Bankr.N.D.Tex. 1982). The court noted that the $30,000 value limit satisfied the concerns of *McMillan* and other courts that the unlimited exemption would allow debtors to claim all property as exempt. The court also found significant the addition of the word "equipment" to the exemption statute. Therefore, the court allowed, as an exempt tool of the trade, a 5½-ton, fully automated screw machine having a value of between $9,000 and $12,000. The court said:

The current statute exempts only tools, equipment and apparatus reasonably necessary for a family. The test is obviously subjective. I interpret it to mean those items which allow the debtor to conduct his trade or profession in approximately the same manner after bankruptcy as he did before bankruptcy. The screw machine allows Debtor to bid for and complete large output jobs that he could not complete without the screw machine. Exemption of the screw machine allows the Debtor to continue his business as he did before his petition in bankruptcy was filed.

*Id.* at 391.

Although the exemption statutes were amended in 1979, it does not appear that the Legislature changed the tools of the trade exemption at that time. TEX.PROP.CODE ANN.

§ 42.002(3) (Vernon 1984). In 1991, the Texas Legislature rewrote the personal property exemption statutes. It raised the total personal property exemption to $60,000 for a family. TEX.PROP.CODE ANN. § 42.001(a)(1) (Vernon Supp.1994). Among the personal property items which may comprise this $60,000 exemption are "tools, equipment, books, and apparatus, including boats and motor vehicles used in a trade or profession." *Id.* at § 42.002(a)(4).

The following changes are significant in the instant case:

1. The statute considered by the *McMillan* Court contained no monetary limit. The 1991 Amendment established the present limit of $60,000 for a family.

2. The 1973 Amendment added "equipment" to the exemption.

3. The statute considered by the *McMillan* Court referred to items "belonging to any trade or profession." Starting with the 1973 Amendment, the wording changed to "used in any trade or profession." By this change, the Legislature seemed to overrule that part of *McMillan* which stated that the exemption did not extend "to articles or things useful to a trade or profession." *McMillan* at 739. Thus, the change allowed a debtor to claim equipment used in his trade or profession as exempt, even though it might be of a general nature.

4. The 1991 Amendment deleted the requirement that tools of the trade be "reasonably necessary for the family." Apparently the Legislature felt that, if the items were used in the trade or profession, they would be appropriate for the exemption even if they were not considered necessary to pursue that trade or profession.

5. In 1973 a boat was added to the list of property which could be claimed as exempt. In 1991, the boat exemption was expanded to include "boats and motor vehicles," showing the intent of the Legislature to allow more than one boat and more than one motor vehicle to be claimed as an exempt tool of the trade.

More recent cases allow larger and more sophisticated equipment to be claimed as exempt. Additionally, they seem to consider any self-employed activity to qualify as a trade or profession. The Texas Supreme Court, in *Hickman v. Hickman,* 149 Tex. 439, 234 S.W.2d 410 (Tex.1950), allowed a widow to claim as exempt "implements of husbandry," a combine and two trailer chassis which were purchased for use in connection with a farm, but were never actually used due to the death of her husband. A bankruptcy court allowed a Chapter 13 debtor, engaged in the paving business, to exempt as tools of the trade a tractor, grader, paver, roller and the trailers upon which to carry them. *In re Hernandez,* 131 B.R. 61 (Bankr.W.D.Tex.1991). The court noted that although the trailers were not peculiarly adapted to the paving business, they were required in order for the business to operate as, without them, the debtor could not get his equipment to and from the job site. Another Chapter 13 debtor, who operated a drafting and scanning service, was allowed to claim sophisticated computer equipment and software to generate engineering drawings and schematics as exempt tools of the trade. *In re Neal,* 140 B.R. 634 (Bankr.W.D.Tex.1992).

The Trustee cites this court's opinion, *In re Weiss,* 92 B.R. 677 (Bankr.N.D.Tex.1988), for the proposition that a debtor cannot claim motor vehicles as tools of the trade. Mr. Weiss was a self-employed custom harvester and claimed several trucks as part of his tools of the trade exemption. This court, citing *McMillan,* denied the exemption for the motor vehicles. However, that case was decided prior to the 1991 amendments to the Texas exemption statutes, which specifically included motor vehicles as tools of the trade.

■ Several courts, including this one, have stated that the tools of the trade exemption does not cover everything that is useful in a business, but only extends to items peculiarly adapted to a trade or profession. *See, e.g., In re Nash,* 142 B.R. 148, 152 (Bankr.N.D.Tex.1992); *Weiss,* 92 B.R. at 679; *McMillan,* 174 S.W.2d at 739. However, this court thinks that the Texas Legislature, by increasing the dollar limits on exempt property, deleting the requirement that the tools

of the trade be reasonably necessary, substituting for "belonging to a trade or profession," the phrase "used in a trade or profession," and expanding the definition of tools of the trade to include boats and motor vehicles, has instructed this court to remove the case-imposed requirement that tools of the trade be peculiarly adapted to the debtor's trade or profession.

█ The more recent cases cited do not address of whether the term "trade" should be limited to an historic craft performed by an artisan using distinctive tools. The courts appear to assume that any legitimate self-employment is included in the phrase "trade or profession." This approach is consistent with the Texas Legislature's ever-widening and modernizing the Texas exemption laws. Thus, the court holds that Mr. Legg's "fertilizer business" is a "trade" for exemption purposes.

## CONCLUSION

The evidence shows that Mr. Legg used the items in question on a regular basis in his business for many years prior to filing bankruptcy, and that he continued to use them in the same manner following his bankruptcy. This use test announced in *England, supra,* 22 B.R. at 391, seems to have been utilized, although not expressly stated, in both *Hernandez* and *Neal.* The court finds that test is appropriate in this case. The Debtors' claim of the disputed items as exempt will be sustained.

## ORDER ACCORDINGLY.[3]

---

**3.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to

Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.