**In re Gary DUCHESNE, Debtor.**

**KAY BANK N. A., Plaintiff-Appellee,**

v.

**Gary DUCHESNE, Debtor-Appellant.**

**No. 82–CV–6.**

United States District Court,
N. D. New York.

March 30, 1982.

Carola & Serbalik, Mechanicville, N. Y., for debtor-appellant; Gerard Quinn, Mechanicville, N. Y., of counsel.

Poskanzer, Hessberg, Blumberg, Dolin, Barba, Greisler & Trombly, Albany, N. Y., for plaintiff-appellee; Richard L. Weisz, Albany, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MINER, District Judge.

### I.

In this action the defendant-debtor appeals from a determination of the United States Bankruptcy Court for the Northern District of New York disallowing his claim for exemption of personal property valued at $3,900 and vacating a stay of the enforcement of plaintiff Bank's security interest in collateral consisting of the same personal property.[1] District Court jurisdiction is founded upon the provisions of Rule 801, Rules of Bankruptcy Proceedings.

### II.

On February 9, 1979, Gary Duchesne, ("Debtor") borrowed the sum of $5,000 from Key Bank N. A. ("Bank"). The loan, including interest, was to be paid in 36 monthly installments of $169.76 each and was secured by "all equipment now owned or hereafter acquired by the Borrower in-

---

**1.** Memorandum-Decision and Order by Hon. Justin J. Mahoney, Bankruptcy Judge, dated November 12, 1981.

cluding all replacements and substitutions thereof...." (Section 9, Installment Loan Note, Disclosure Statement and Security Agreement). The debtor was, at the time of the loan, the sole proprietor of an automobile body repair business. His mother, Shirley Duchesne, was a co-signer on the loan, and the loan application indicated that the proceeds of the loan were to go toward property improvements and working capital in the debtor's business.

### III.

When the debtor filed his petition under ch. 7 of the Bankruptcy Code, he listed the Bank as a secured creditor and claimed an exemption of $3,900 for the implements of his trade. Apparently, this property is listed in the Bankruptcy Petition as a "compressor, assorted tools and tool box." During the pendency of the bankruptcy proceeding, an inventory of debtor's equipment was taken and the following items were found: air compressor and tank; propane gas tank and gauges; portable car wash; vacuum cleaner; portable pump and equipment; various electrical, air and hand tools; portable fans; fluorescent light fixtures; electrical cords; and various materials, including sandpaper and paint. (Exhibit 4). Some of the materials were purchased, subsequent to the filing of the petition but prior to the inventory, from another body shop for the sum of $150. (Transcript, p. 34).

Contending that it was the holder of a secured claim in the amount of $3,449.23, representing the balance due on its loan to the debtor, the Bank sought to vacate the automatic stay afforded by the provisions of 11 U.S.C. § 362 in order to permit the foreclosure of its security interest and the sale of the personal property. In the alternative, the Bank requested "adequate protection in the form of monthly payments of $170.00 during the pendency of this action...." (Complaint, p. 2).

In vacating the stay, the Bankruptcy Court examined some legislative history

pertaining to 11 U.S.C. § 522(f) and determined that the exemption provided for implements or tools of the trade of a debtor does not extend to implements or tools given as security for a business loan. The Bankruptcy Court found and concluded as follows: "This equipment, excepting those small items purchased after the filing of the bankruptcy petition, are assets of a business subject to a security interest and not tools of the trade qualifying for exemptions as provided by Section 522(f) of the code. To allow the exemptions in items, pledged as collateral for a business loan, having substantial value not only to the debtor but also to the creditor, would constitute impairment of a contract right and further is tantamount to deprivation of property without due process of law." (Memorandum-Decision and Order, supra, final page [unnumbered]). Since this Court disagrees with the Bankruptcy Court's analysis, the determination will be reversed, and the matter remanded for the purpose of identifying the tools and implements of the debtor's trade included in the post-petition inventory.

### IV.

It was clearly the intention of Congress that a bankrupt be permitted to make a fresh start after bankruptcy by the use of the tools or implements necessary to enable him to pursue and make a living at his trade. *Matter of Upright*, 1 B.R. 694 (Bkrtcy.N.Y.1979). The debtor here is a craftsman, skilled in the repair of automobile bodies. The implements and tools of his trade consist of such instruments and things as are used or employed in this work. *Black's Law Dictionary* (5th ed. 1979); *Webster's Third International Dictionary* (unabridged) p. 2408. The Bankruptcy Code makes no distinction between the tools and implements of a self-employed debtor engaged in a particular trade and those of an employee debtor who works in the same trade. The Bankruptcy Court's reliance on a certain Congressional Report[2] is mis-

---

**2.** H.R.Rep. No. 595, 95 Cong., 1st Sess. 127 *reprinted in* (1978) U.S.Code Cong. & Ad.News

179, 304: "Lending institutions generally have required a consumer-debtor to convey a securi-

placed. While the report refers to the protection to be afforded to a consumer-debtor against the threat of a lending institution to repossess tools of little market value as a matter of leverage in bankruptcy proceedings, there is no indication of a congressional intent to limit the debtor's avoidance power under § 522(f) to such situations. Indeed, a debtor who does not claim a residential real property exemption may claim an exemption for tools and implements of his trade to a total value of $8,650.[3] The debtor here is entitled to the exemption of so much of the inventoried equipment as constitutes the tools and implements of his trade, free of any non-possessory, nonpurchase-money security interests held by the Bank.[4] The Bank is entitled to foreclose its lien on the remainder.

## V.

The matter is remanded to the Bankruptcy Court for further proceedings consistent with the foregoing.

It is so Ordered.

ty interest in household goods or tools of the trade as a condition of making a loan. The lending institutions took a security interest in such property, not because of the intrinsic value of the property, but because of the leverage it gave them in bankruptcy proceedings. When the debtor filed a petition in bankruptcy, the secured party would threaten to repossess the property subject to its security interest unless the debtor reaffirmed his debt. Such property usually has little realizable market value, but the replacement cost is high and thus the creditor was able to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess."

3. $750 for tools and implements allowed by 11 U.S.C. § 522(d)(6) plus $7,900, representing the sum of $400 and the unused amount ($7,500) of the real property exemption. 11 U.S.C. §§ 522(d)(1) and 522(d)(6).

4. The Bankruptcy Code provides that the debtor may avoid the fixing of a lien on his interest in property to the extent that the lien impairs an exemption to which he is entitled, if the lien is "a nonpossessory, nonpurchase-money security interest in any ... implements, professional books, or tools of the trade of the debtor...." 11 U.S.C. § 522(f)(2)(B).