**In re Oscar Howard NIPPER d/b/a Landstar Range Donna Lenz Nipper a/k/a Donna Sue Lenz, Debtors.**

**Bankruptcy No. 99–33019.**

United States Bankruptcy Court, E.D. Tennessee.

Dec. 16, 1999.

---

Richard M. Mayer, Knoxville, TN, for the Debtors.

John P. Newton, Jr., Knoxville, TN, Chapter 7 Trustee.

### MEMORANDUM ON OBJECTION TO EXEMPTIONS

RICHARD S. STAIR, Jr., Chief Judge.

This matter is before the court on the Objection to Exemptions filed by the Chapter 7 Trustee, John P. Newton, Jr., on September 23, 1999. At issue is the exemption claimed by the Debtors, Oscar Howard Nipper and Donna Lenz Nipper, pursuant to TENN. CODE ANN. § 26–2–111(4) (Supp.1999), in a 1982 White Road Commander Truck and 1986 Great Dane Trailer. The Trustee filed a Brief in Support of Objection to Exemptions on November 29, 1999, and the Debtors filed a Brief on November 30, 1999. This contested mat-

ter was tried before the court on December 6, 1999.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

## I

The Debtors filed their Voluntary Petition under Chapter 7 on July 22, 1999. In Schedule C to their petition they claimed an exemption in a "1982 White Rd. Commander" truck and a "1986 Great Dane Trailer" in the amount of $3,800.00 pursuant to Tenn. Code Ann. § 26–2–111(4), which provides an exemption for "tools of the trade of the debtor" of $1,900.00.[1] The truck and trailer are owned solely by Mr. Nipper and are valued together in the Debtors' petition at $6,500.00. Mr. Nipper, a truck driver, testified that he leases the truck and trailer to Landstar Ranger, a company with whom he has been employed as an independent "owner/operator" for several years. He uses the truck and trailer to haul freight for Landstar Ranger and is paid sixty-six percent (66%) of the amount of each freight bill for the goods he hauls. He is responsible for paying all expenses associated with the operation of the truck and trailer. Mrs. Nipper testified that she does billing and paperwork associated with her husband's operation of his truck and that she occasionally accompanies him on trips.

## II

In Tennessee, a debtor may claim an exemption in "[t]he debtor's aggregate interest, not to exceed one thousand nine hundred dollars ($1,900) in value in any implements, professional books, or tools of the trade of the debtor or the

trade of a dependent of the debtor." Tenn. Code Ann. § 26–2–111(4) (Supp. 1999).[2] In *In re Siegel,* 214 B.R. 329 (Bankr.W.D.Tenn.1997), the court considered § 26–2–111(4) as it applied to various property, including a computer, used by a debtor in his law practice. It noted that Tennessee cases construing the tools of the trade exemption are scarce, however, it located one instructive case, *Terry v. McDaniel,* 103 Tenn. 415, 53 S.W. 732 (1899), decided by the Tennessee Supreme Court. *See Siegel,* 214 B.R. at 332–33. There, the court permitted Mr. Terry, a barber, to exempt a chair and mirror as tools of the trade. *See Terry,* 53 S.W. at 733. In so doing it highlighted the firmly established principle that laws providing exemptions should be liberally construed in the debtor's favor in order to preserve the exemption. *See id.; see also Nazarene Fed. Credit Union v. McNutt (In re McNutt),* 87 B.R. 84, 87 (9th Cir. BAP 1988) (recognizing that exemptions should be liberally construed in favor of debtors); *American Bank and Trust v. Miller (In re Miller),* 30 B.R. 819, 822 (M.D.Tenn.1983) (same) (citing *Porter v. Aetna Cas. and Sur. Co.,* 370 U.S. 159, 161–62, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407 (1962)).

In light of the lack of cases construing the tools of the trade exemption, the *Seigel* court considered *Terry* and decisions of other jurisdictions, then made its own determination of how Tennessee courts would apply the exemption. *See Siegel,* 214 B.R. at 331–33 (citing with approval *In re Page,* 131 B.R. 530 (Bankr.D.R.I.1991) (finding that a debtor's piano was exempt as a tool in his trade as "spiritual lecturer") and *In re Duchesne,* 21 B.R. 390 (N.D.N.Y.1982)). It stated four guiding

---

1. On September 14, 1999, the Debtors amended Schedule C to include an additional exemption in the truck and trailer under Tennessee's general personal property exemption statute, Tenn. Code Ann. § 26–2–102 (1980), in the amount of $1,368.00. The Trustee does not object to the additional exemption.

2. Tennessee chose to "opt out" of the federal bankruptcy exemptions as provided in 11

U.S.C.A. § 522(b) (West 1993 & Supp.1999). *See* Tenn. Code Ann. § 26–2–112 (1980). The federal exemption covering tools of the trade covers "[t]he debtor's aggregate interest, not to exceed $1,625 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." 11 U.S.C.A. § 522(d)(6) (West Supp. 1999).

principles for applying the Tennessee tools of the trade exemption:

1. Exemption laws are to be liberally construed in order to preserve the exemption.

2. The determination of whether personal property is a tool of the trade must be made on a case by case basis.

3. The debtor must demonstrate that he practiced a particular trade or occupation at the time of the filing of his bankruptcy petition or that he had engaged in the particular trade or occupation in the past and intended to resume it.

4. The debtor must demonstrate that the property that he seeks to exempt is reasonably necessary to the performance of his chosen trade or occupation.

*Id.* at 393.

■ The court finds no cases that consider the specific issue now before it, whether a debtor who is a truck driver may claim an exemption in a vehicle[3] under § 26–2–111(4).

### III

■ The bankruptcy courts are divided on the question of whether an exemption for implements and tools of a trade can encompass a motor vehicle.[4] *See In re Patterson,* 825 F.2d 1140, 1145–46 (7th Cir. 1987); *McNutt,* 87 B.R. at 86 n. 1 (collecting cases in both lines of decision). The applicability of the exemption to tractors has come before two courts at the federal appellate level in the context of lien avoidance, again with different results. *See Patterson,* 825 F.2d at 1145–47 (disallowing the exemption in a tractor); *Production Credit Assoc. of St. Cloud v. LaFond (In re LaFond),* 791 F.2d 623, 626–27 (8th Cir.1986) (permitting the exemption in a

tractor) (citing *Augustine v. United States,* 675 F.2d 582 (3rd Cir.1982) (assuming that tractor was within the federal exemption when deciding whether the dollar cap under the exemption applied in the context of lien avoidance)).

Courts approving vehicles as tools of the trade require the vehicle to be necessary or reasonably necessary to the debtor's trade or business. *See In re Graettinger,* 95 B.R. 632, 635 (Bankr.N.D.Iowa 1988) (finding that the debtor's truck was "more than reasonably necessary to [his] business; it is essential"); *McNutt,* 87 B.R. at 87 (adopting the rule that "a motor vehicle is a tool of the trade if it is necessary to, and is used by the debtor to carry on his or her trade"); *Dempsey v. Household Fin. Corp. (In re Dempsey),* 39 B.R. 561, 563 (Bankr.E.D.Pa.1984) (same); *In re Rule,* 38 B.R. 37, 41 (Bankr.D.Vt.1983) (same); *Credithrift of Am., Inc. v. Dubrock (In re Dubrock),* 5 B.R. 353 (Bankr. W.D.Ky.1980) (same); *Credithrift of Am., Inc. v. Meyers (In re Meyers),* 2 B.R. 603, 606 (Bankr.E.D.Mich.1980) (same). Courts adhering to the rule that a motor vehicle is a tool of the trade if it is necessary and is used by the debtor to carry on his trade have rejected attempts by debtors to exempt vehicles that they did not consider necessary. *See, e.g., Rule,* 38 B.R. at 41 (finding that a mechanic could not claim an exemption in a truck as a tool of the trade); *Meyers,* 2 B.R. at 606 (determining that a vehicle needed to go to and from work did not qualify for the exemption). In fact, one court has decided that a mechanic's truck was not necessary for the particular debtor's practice of his trade and was not exempt property, even though it was "a valuable business property." *Rule,* 38 B.R. at 41.

---

3. Under Tennessee law, both the Debtors' truck, which is, in fact, a "truck tractor," and trailer are vehicles. *See* Tenn. Code Ann. §§ 55–1–104(4) and 55–1–105 (1998).

4. Courts have considered the issue with respect to both state exemptions and the federal

exemption, which was drawn from common concepts in state exemptions. *See, e.g., Patterson,* 825 F.2d at 1146–47 (recognizing that the federal exemption was developed from the state exemptions and examining general history and intent of both).

■ Courts permitting the exemption for vehicles apparently base their decisions primarily upon the purpose of the exemption, which is to give a debtor the ability "to continue his chosen means of earning income" as part of the debtor's fresh start. *Graettinger*, 95 B.R. at 635; *see also McNutt*, 87 B.R. at 87 ("If we are indeed concerned with giving debtors a fresh start, we must give them the wherewithal."); *Meyers*, 2 B.R. at 605 (explaining that the allowance of an exemption in a vehicle as a tool of the trade makes sense under the Bankruptcy Code because it comports with the intention of Congress to provide "a realistic fresh start"). When finding that a tractor could be a tool of the trade under the federal exemption, the Eighth Circuit stressed the desire of Congress " 'to give substance to the concept of a fresh start.' " *LaFond*, 791 F.2d at 627 (quoting *Thorp Credit and Thrift Co. v. Pommerer (In re Pommerer)*, 10 B.R. 935, 946 (Bankr.D.Minn.1981)). It explained that to deny the exemption for a tractor would be to leave " 'the debtor financially fresh, but without a start.' " *Id.* (quoting *Pommerer*, 10 B.R. at 946). These decisions also find support in the principle that exemptions are to be liberally construed in favor of the debtor. *See, e.g., McNutt*, 87 B.R. at 86; *Rule*, 38 B.R. at 37; *Meyers*, 2 B.R. at 605.

In addition, these courts have decided that the existence of a separate exemption for motor vehicles did not preclude a debtor from claiming an exemption in a vehicle as a tool of the trade. *See, e.g., Dempsey*, 39 B.R. at 563; *Rule*, 38 B.R. at 41; *Meyers*, 2 B.R. at 605.

**5.** The version of § 522(f) in effect at the time *Trainer* was decided was codified at 11 U.S.C.A. § 522(f) (West 1993).

**6.** *See supra* note 2, at 3.

**7.** The Texas legislature apparently has not agreed with the holdings in decisions like *McMillan* and *Trainer* in light of the several amendments it has made to its exemption statutes. *See In re Legg*, 164 B.R. 69, 72–73

## IV

The Trustee cites *In re Trainer*, 56 B.R. 21 (Bankr.S.D.Tex.1985), the facts of which are similar to those now before the court. *Trainer* involved a debtor's action under 11 U.S.C.A. § 522(f) (West Supp.1999)[5] to avoid a lien against the truck and trailer that he used as "an independent over-the-road trucker." *Id.* at 22. The debtor claimed that the truck and trailer were exempt property under 11 U.S.C.A. § 522(d)(6) (West Supp.1999), the federal exemption covering tools of the trade.[6] *See id.* At the outset, the court noted the significant number of conflicting decisions regarding whether a vehicle may be considered a tool of the trade. *See id.; see also McNutt*, 87 B.R. at 86 (collecting cases in both lines of authority).

That court was persuaded, however, that the truck and trailer could not be exempt as tools of a trucker's trade. *See Trainer*, 56 B.R. at 23. It cited two reasons for its decision. First, the court adopted the reasoning of the Texas Court of Appeals in *McMillan v. Dean*, 174 S.W.2d 737 (Tex. Civ.App.1943), that

> [A] "tool or apparatus belonging to a trade" did not extend to articles or things merely *useful* to a trade or profession and that the exemption statute was not intended to encompass general commercial pursuits which require no particular skill in the use of tools or apparatus.

*Id.* In addition, the court echoed the *McMillan* court's reasoning that if trucks were considered exempt then so would "other large and complex machinery." *Id.*[7]

(Bankr.N.D.Tex.1994). The amendments expanded the Texas implements and tools of the trade exemption beyond the confines set in those decisions. *See id.* (citing amendments to the Texas tools of the trade exemption which have increased the dollar limits, eliminated the requirements of reasonable necessity and particular adaptation or skill, and defined the exemption to specifically include motor vehicles).

The court in *Trainer* also ascribed significance to the low dollar amount of the federal exemption for tools of the trade relative to the value of a vehicle. *See Trainer*, 56 B.R. at 23 (discussing the federal exemption for the purposes of 11 U.S.C.A. § 522(f)) (citing *In re O'Neal*, 20 B.R. 13, 17 (Bankr.E.D.Mo.1982), *superceded by statute as recognized in Lipe v. Corner Stone Bank (In re Lipe)*, 36 B.R. 597 (Bankr.W.D.Mo.1983)). It interpreted that gap as evidence that Congress did not intend that the tools of the trade exemption would apply to vehicles. *See id.*

## V

The reasoning of the *Trainer* and *McMillan* courts was followed and amplified by the Seventh Circuit in *In re Patterson*, 825 F.2d 1140 (7th Cir.1987). In *Patterson*, the court considered whether a farmer's tractor could qualify for the federal exemption for implements and tools of the trade. *See id.* at 1142, 1145–47. It began by deciding not to construe the exemption provision broadly. *See id.* at 1142. That decision was based on its belief that although exemptions benefit debtors in bankruptcy, they drive up the cost of credit. *See id.* Thus, it concluded, exemptions ultimately hurt all consumers, including debtors, the very class that exemptions are designed to protect. *See id.* Finding no evidence that Congress intended broad construction for the exemption, it declined to take a broad approach. *See id. But cf. LaFond*, 791 F.2d at 627 (declining to consider the effect that exemptions and lien avoidance have on the cost of credit as a policy consideration within the province of legislatures rather than courts); *Siegel*, 214 B.R. at 332 (" '[E]xemption law must be liberally construed to preserve the exemption.' ") (quoting *Terry v. McDaniel*, 53 S.W. at 733); *McNutt*, 87 B.R. at 86 ("With all due respect, ... *Patterson* is too extreme. It hardly needs citation that exemptions are liberally construed in favor of debtors.").

The court considered the purpose and history of the implements and tools of the trade exemption, which it found to be the strongest evidence against its application to tractors and vehicles:

> The purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade. Although as a matter of semantics farm "implements" could be thought to cover machinery and vehicles as well as hand tools, this would be an incongruous interpretation. There would be no point in allowing a debtor to exempt $750 worth of equipment that might have a market value of many thousands of dollars. He would have to sell it anyway, and probably he could not replace it; certainly he could not continue to use it in his trade.
>
> The history of the exemption is the strongest evidence that it was not meant to encompass the items that the Pattersons are seeking to exempt. States have long granted an exemption for tools or implements of the trade, and in interpreting these exemptions state courts have generally distinguished between personal hand tools of modest value, on the one hand, and machinery on the other.

*Patterson*, 825 F.2d at 1146. The court explained that to exempt a tractor, an expensive piece of machinery, was similar to exempting a debtor's interest in an airplane used by an air charter service. *See id.* at 1147. It viewed both items as expensive pieces of machinery and as the primary capital asset of its owner. *See id.* An exemption in such items as implements or tools of the trade, it concluded, "can't have been what Congress had in mind in allowing an exemption limited to $750[8]." *Id. But cf. Middleton v. Farmers State Bank of Fosston (In re Middleton)*, 45 B.R. 744, 748 (Bankr.D.Minn.1985) ("Farmers are forced to use large expen-

---

8. Now $1,625.00. *See* 11 U.S.C.A. § 522(d)(6) (West Supp.1999).

sive implements to be farmers.... They should not be penalized by a closing off of their rights to exemptions simply because they choose farming as a means of supporting their family.").

## VI

■ The view in *Patterson* and *Trainer* that the legislative intent to include only small items under the exemption is persuasive when applying TENN. CODE ANN. § 26–2–111(4). While the gap in the present case between the dollar amount of the exemption and the value of the truck and trailer may not be great, it nonetheless exists. Motor vehicles, including tractor trailer rigs, are high dollar items. The purpose behind the exemption is to allow the debtor to retain the "tools" essential to the debtor's "trade." This is exemplified by the language of TENN. CODE ANN. § 26–2–111(4) which refers to the debtor's "aggregate interest in any implements, professional books, or tools of the trade." The clear implication is that the debtor claiming an exemption under this statute will be able to retain a quantity of "implements," "professional books," or "tools of the trade." In this court's mind, each category of exempt items identifies goods of a relatively small dollar value. To construe "tools of the trade" under § 26–2–111(4) to include high dollar items such as a truck and trailer, will not serve the statute's purpose.[9] Rather, in most instances, the trustee would be required to sell the property to realize the value above the exempt amount for the benefit of creditors. This would not leave a debtor in possession of the "tools" necessary for his or her trade.

If the legislature intended by § 26–2–111(4) that a motor vehicle was a "tool[ ] of the trade of the debtor," it should have said so. Under the facts of the present case, this court cannot find that the Debtors' truck and trailer are "tools" that fall within the ambit of § 26–2–111(4).

■ Furthermore, the court finds that Mrs. Nipper has no standing to claim the exemption because the truck and trailer are not owned or used by her. When debtors file a joint petition, their "estates are in legal effect separate or several." *In re Howard,* 6 B.R. 220, 222 (Bankr. S.D.Ohio 1980); *Butler v. Sharik (In re Sharik),* 41 B.R. 388, 390 (Bankr.E.D.N.C. 1984).[10] Accordingly, each spouse can claim an exemption only in property from his or her separate estate. *See Sharik,* 41 B.R. at 390; *Howard,* 6 B.R. at 223; *see also Patterson,* 825 F.2d at 1140, 1142 (permitting both debtors to claim an exemption in the tractor because they owned it jointly and because they were both farmers). The truck and trailer are owned by Mr. Nipper and used by him in the operation of his business as an "owner/operator." Therefore, only he may claim an exemption in them.

For the reasons stated herein, the Trustee's Objection to Exemptions will be sustained. An appropriate order will be entered.

---

**9.** If a truck and trailer are "tools of the trade," then so may be an airplane, bus, earthmoving equipment, and any other item of personalty used by a debtor in a trade or business regardless of its size or value. As noted by the Seventh Circuit, such large items are generally the capital assets of a business. *See Patterson,* 825 F.2d at 1147.

**10.** The separate estates may be consolidated pursuant to 11 U.S.C.A. § 302(b) (West 1993). *See Sharik,* 41 B.R. at 390; *Howard,* 6 B.R. at 223.