In re James F. AURELIO
and Camille Aurelio.

Bankruptcy No. 99–40340.

United States Bankruptcy Court,
N.D. Mississippi.

April 26, 2000.

Lisa L. Meggs, Columbus, MS, for James F. and Camille Aurelio.

Tom Segrest, Graham & Segrest, Columbus, MS, for creditor Ron Blevins, d/b/a B & S Sales and Service.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is an objection, filed by Ron Blevins, d/b/a B & S Sales and Service, to the amended schedule of exemptions submitted by the debtors, James F. Aurelio and Camille Aurelio; response to said objection having been filed by the debtors; and the court, having heard and considered same, hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the subject matter of and the parties to this contested proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II.

The debtors owned and operated a family restaurant business, but due to financial difficulties, filed their voluntary bankruptcy petition on June 27, 1999. Subsequently, the debtors filed a motion to sell their restaurant equipment, and an order was entered approving the sale on October 26, 1999. Thereafter, the debtors, who initially had not claimed an exemption in the restaurant equipment, filed an amended Schedule C on October 28, 1999, asserting a tools of the trade exemption in the proceeds realized from the sale of the restaurant equipment. The amended exemption claim was not noticed to the creditors in the case. Ron Blevins, d/b/a B & S Sales and Service (hereinafter Blevins) acknowledged that he became aware of the amended exemption claim on or about November 15, 1999, and filed an objection thereto on December 2, 1999.

There are three issues that must be resolved in this proceeding:

1. Was the objection to the amended exemption claim timely filed by Blevins since the filing occurred more than 30 days after the debtors had submitted their amended Schedule C?

2. Can restaurant equipment be claimed as exempt tools of the trade pursuant to § 85–3–1(a)(iii), Miss.Code Ann.?

3. If restaurant equipment qualifies as exempt tools of the trade, can the proceeds realized from the sale of the equipment also be claimed as exempt?

The court will address each of these issues sequentially.

### III.

Was the objection to the amended exemption claim timely filed?

Rule 4003(b), Federal Rules of Bankruptcy Procedure, requires all creditors to file objections to amended exemption claims within 30 days of the amendment. However, Rule 1009 requires notice to be given to any creditor affected by such an amendment.

In the case before this court, no notice was given to Blevins, as evidenced by the amended Schedule C, which contains no certificate of service. The amended schedule was filed on October 28, 1999. According to the testimony, Blevins received an unofficial notice of the amendment on or about November 15, 1999, and filed his objection on December 2, 1999, 34 days after the amendment was filed, but within 30 days of receiving notice. The court is of the opinion that the objection should be considered timely in view of the fact that no official notice of the amendment has yet been filed by the debtors.

### IV.

Can restaurant equipment qualify as tools of the trade for exemption purposes under Mississippi law?

Case law in Mississippi concerning tools of the trade is scarce and in fact non-existent on the question of restaurant equipment. The leading authority dealing with tools of the trade in Mississippi is over one hundred years old and construed Mississippi Code § 468 which is not similar to the current statute. *See, Frantz v. Dobson*, 64 Miss. 631, 2 So. 75 (1887) (holding that a printing press is not exempt as a tool of the trade in Mississippi). Since the ruling in *Dobson*, the Mississippi exemption statute for tools of the trade has changed from "the tools of any mechanic necessary for carrying on his trade" to personal property selected by the debtor including "implements, professional books, or tools of the trade." *See*, Miss.Code Ann. § 85–3–1(a)(iii) (West, WESTLAW through 1999 Reg. Sess.).

The new language of § 85–3–1(a)(iii), no longer referring to the tools of a mechanic, changes significantly the way the tools of the trade exemption should be applied in Mississippi. Therefore, the court must look to other jurisdictions and analyze the various tests that have been formulated concerning tools of the trade in order to develop an appropriate application of the exemption in Mississippi.

Two tests have emerged in cases that determine what property may be exempted as tools of the trade. William L. Norton, Jr. 2 *Norton Bankruptcy Law and Practice 2d § 46:16* (West, WESTLAW current through the Feb., 2000 Supplement). One approach focuses on the "function" and "utilitarian purpose" of the item being claimed as a tool of the trade. *In re Smith*, 206 B.R. 186, 188 (Bankr. N.D.Iowa 1996) (citing *In re Walkington*, 42 B.R. 67, 71 (Bankr.W.D.Mich.1984); *In re Dubrock*, 5 B.R. 353, 355 (Bankr. W.D.Ky.1980); *In re Bulger*, 91 B.R. 129, 131–32 (Bankr.M.D.Ala.1988); and *In re Cook*, 66 B.R. 3, 5 (Bankr.W.D.Wis.1985)). The above approach is based essentially on whether the claimed property is truly necessary for the debtor to carry on his or her particular trade or profession. These courts tend to take a "common sense" approach in examining the tools of the trade exemption.

The second approach considers tools of the trade more narrowly as "inanimate objects which augment or extend the limits of human physical ability or power." *Smith*, 206 B.R. at 189 (citing *In re Newbury*, 70 B.R. 1, 2 (Bankr.D.Kan.1985); and *In re Eakes*, 69 B.R. 497, 498 (Bankr. W.D.Mo.1987)). Courts following the second approach interpret tools of the trade in the strictest manner by referring to the dictionary which defines a tool as "an instrument of manual operation" and lists

examples of "a saw" or "a hammer." *Id.,* (citing *In re Hahn,* 5 B.R. 242 (Bankr. S.D.Iowa 1980)). These courts tend to limit the exemption to small tools of minimum value. These two approaches have produced inconsistent results even within a single jurisdiction. *See,* Hugh M. Ray and Robin Russell *Texas Practice Guide Creditors Rights* § 11:30 (1999).

Courts using the "utilitarian purpose" or "function" approach have given the tools of the trade exemption surprisingly expansive interpretations. For example, a Peterbilt truck has been found to be a tool of the trade under the Oklahoma exemption scheme by applying the "function" or "utilitarian purpose" test to the Oklahoma statute. *See, In re Mackey,* 209 B.R. 251, 252 (Bankr.E.D.Okla.1997). *See also In re Heape,* 886 F.2d 280, 283 (10th Cir.1989) (holding that breeding stock are tools of the trade for farmers). The court in *Mackey* applied a two-pronged analysis commonly used in many jurisdictions:

1. The debtor must establish a trade or profession;

2. The claimed exemption must be an item necessary to continue in that trade or profession.

*In re Mackey,* 209 B.R. at 251, (citing *In re Siegmann,* 757 P.2d 820, 821 (Okla. 1988)).

The Oklahoma court construed the tools of the trade exemption liberally which is the practice of the majority of jurisdictions in interpreting exemption statutes in general. *Id.* at 252. (*See Also* 8 Am.Jur. Exemptions § 2 (1989)). In the spirit of liberal statutory construction, the court noted that the exemption for tools of the trade applies to all tools "regardless of size, source of power, mobility or mode of operation." *Id.* However, the result reached in *Mackey,* based on a liberal statutory construction, will not be found in all jurisdictions.

Judge Posner of the Seventh Circuit Court of Appeals took a much narrower view when faced with a tools of the trade exemption claim covering farm equipment and cattle. *See, In the Matter of Patterson,* 825 F.2d 1140, 1147 (7th Cir.1987). In *Patterson,* Judge Posner was construing the federal exemption statute, 11 U.S.C. § 522(d), which provides an exemption for tools of the trade not to exceed seven hundred and fifty dollars in value. *Id.* at 1141. *Patterson* involved joint debtors, who through combining and stacking various federal exemptions, claimed a total of $17,300.00 as their tools of the trade exemption. *Id.* at 1142.

In *Patterson,* the debtors presented a "function" test argument by claiming that their tractor and cattle were necessary for "turning raw materials into salable products." *Id.* at 1146. The court rejected this argument and illustrated how such a broad interpretation of the exemption would allow most capital assets of a business to be exempt as tools of the trade. *Id.* Judge Posner stated, "[t]he purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade." *Id.* Judge Posner bolstered his position by referring to the low cap of $750.00 allowed under the federal exemption statute; he asserted that this reflected a Congressional intent that only tools of limited value should be eligible for the exemption. *Id.* "There would be no point in allowing a debtor to exempt $750.00 worth of equipment that might have a market value of many thousands of dollars." *Id.* Posner further explained that the exemption's history revealed that state courts have long looked at "personal hand tools of modest value" differently than large "machinery." *Id.* (citing 3 *Collier on Bankruptcy* ¶ 522.15, at p. 522–52.3 n. 1 (15th ed., King ed., 1986)).

In essence, the *Patterson* opinion stands for the proposition that the tools of the trade exemption is intended for small tools of "modest" value which are associated with an artisan or mechanic. The Seventh Circuit does not favor a liberal construction of the exemption.

■ The bankruptcy courts in Tennessee have devised a helpful four part test for tools of the trade cases. *See, In re Siegel*, 214 B.R. 329, 333 (Bankr. W.D.Tenn.1997); *See also, In re Nipper*, 243 B.R. 33, 36 (Bankr.W.D.Tenn.1999). The elements of this test are enumerated as follows:

1. Exemption laws are to be liberally construed in order to preserve the exemption.

2. The determination of whether personal property is a tool of the trade must be made on a case by case basis.

3. The debtor must demonstrate that he practiced a particular trade or occupation at the time of the filing of his bankruptcy petition or that he had engaged in the particular trade or occupation in the past and intended to resume it.

4. The debtor must demonstrate that the property that he seeks to exempt is reasonably necessary to the performance of his chosen trade or occupation.

*Id.*

In *Nipper*, the debtor was attempting to claim a truck and trailer as exempt tools of the trade. It is important to note in analyzing the *Nipper* case that the court was construing the Tennessee exemption statute which contains basically the same operative language found in the Mississippi exemption: "implements, professional books, or tools of the trade of the debtor." Compare Tenn.Code Ann. § 26–2–111(4) (Supp.1999) with Miss.Code Ann. § 85–3–1(a)(iii). However, a difference is found in the dollar amounts allowed under each statute. In Mississippi, the exemption can reach $10,000.00, *for each debtor.* In Tennessee, the amount is only $1,900.00.

The *Nipper* court analyzed at length the opinion written by Judge Posner in *Patterson* and disagreed with Judge Posner's narrow construction of the exemption statute. Rather, the court recognized the liberal construction exemption statutes have received in other Tennessee courts, as well as, other jurisdictions across the country. However, the *Nipper* court did agree with the basic theme of *Patterson* which limits the tools of the trade exemption to small items. This may be explained, in part, by the relative similarity of the low dollar amount allowed under the federal exemption statute, construed in *Patterson*, and the modest dollar amount allowed in Tennessee. Primarily, because of this factor, the court did not allow the debtor to claim his truck and trailer as exempt tools of the trade.

In *Dominion Bank of the Cumberlands v. Nuckolls*, 71 B.R. 593, 595 (W.D.Va. 1987), the court found that restaurant equipment did not come under the Virginia exemption statute for tools of the trade. However, this case can easily be distinguished from the case under review. In *Nuckolls*, the court construed the Virginia exemption statute which only applies to a mechanic's tools of the trade. The court held that it is common sense that a "restaurateur" is not a "mechanic" and, therefore, restaurant equipment cannot be exempted under a statute that exempts a mechanic's tools of the trade. As noted previously, the new Mississippi exemption statute, § 85–3–1, is not limited to the tools of a mechanic. So, in Mississippi, a restaurateur will not automatically be excluded from using the tools of the trade exemption.

In *In re Baldowski*, 191 B.R. 102, 105 (Bankr.N.D.Tex.1996), Judge John Akard held that restaurant equipment did qualify as exempt property under the tools of the trade exemption. The Texas statute, like the Mississippi statute, does not limit tools of the trade to those of a mechanic's trade. The court focused on whether the items claimed as exempt were necessary for the debtor to successfully operate his restaurant. "The property claimed by the debtor: booths, a cash register, plates, platters, knives, forks, spoons, tables, chairs, and glasses, are all used by restaurant operators and are all necessary to carry on the business." *Id.* The Texas court's deci-

sion appears to be based on a "utilitarian purpose" or "function" test, although this was not specifically mentioned. It is also important to note that the exemption cap under the Texas exemption scheme is $60,-000.00.

■ In the instant case, applying *Nipper's* four step test and following the logic of *Baldowski*, restaurant equipment should qualify as tools of the trade for purposes of exemption in Mississippi. However, in this proceeding, the analysis does not stop at this point.

### V.

Can the debtors claim a tools of the trade-exemption in the proceeds realized from the sale of the restaurant equipment?

■ In order to claim a tools of the trade exemption, one must be engaged in a particular trade or profession at the time of filing or have formerly been engaged in the trade or profession and have the present intent to resume the trade. *In re Nipper*, 243 B.R. 33, 36 (Bankr.W.D.Tenn. 1999). The purpose of the tools of the trade exemption is to "enable a debtor to continue in his trade." *See, In the Matter of Patterson*, 825 F.2d 1140, 1144 (7th Cir. 1987). "If when he asks for the exemption he is out of the trade, allowing the exemption will not advance the statutory purpose." *Id.* Therefore, the tools of the trade exemption does not automatically cover proceeds. *Id.* at 1145. Decisions that have allowed proceeds to be exempt as tools of the trade only extend the exemption to proceeds that are intended to be used for the purchase of more tools of the trade. *See also, In re Smith*, 29 B.R. 11, 12 (Bankr.D.Or.1983) (not allowing an exemption when the debtor produced no evidence of an intent to reinvest the proceeds in tools of the trade).

■ In the case currently before the court, the debtors sold the restaurant equipment before they amended their bankruptcy schedules in order to claim an exemption in the sales proceeds. They have produced no evidence of any intent to resume their restaurant business or any evidence that the sales proceeds will be used to purchase new restaurant equipment. Therefore, the claimed exemption does not cover proceeds without any intent to reinvest such proceeds in similar tools of the trade. For this reason, the debtors' exemption claim must be denied.

For the reasons stated hereinabove, the debtors' amended exemption claim which relates to the proceeds realized from the sale of their restaurant equipment, which otherwise would qualify under the facts of this case as a tools of the trade exemption pursuant to § 85–3–1(1)(a)(iii), Miss.Code Ann., is not well taken and must be overruled.

Those funds currently in the registry of the court, totaling approximately $15,-254.80, shall be distributed by the clerk of court to the Chapter 13 trustee to be used in furtherance of the debtor's Chapter 13 plan.