**In re Juanita Kate LUTTRELL, Debtor.**

No. 02–34539.

United States Bankruptcy Court, E.D. Tennessee.

June 30, 2004.

Cynthia T. Lawson, Joy L. Vittone, Bond, Botes & Lawson, P.C., Knoxville, TN, for Debtor.

William Allen, Oak Ridge, TN, Mostoller, Stulberg & Whitfield, for Ann Mostoller, Chapter 7 Trustee.

## MEMORANDUM ON OBJECTION TO DEBTOR'S CLAIMED EXEMPTION

RICHARD STAIR, JR., Bankruptcy Judge.

This contested matter is before the court upon the Objection to Debtors' [sic] Claim of Exemption (Objection) filed by the Chapter 7 Trustee, Ann Mostoller, on May 10, 2004. The Trustee objects to the Debtor's Third Amendment to Schedule C filed on April 23, 2004, whereby she claims as exempt personal property the proceeds she received pursuant to the Occupational Illness Compensation Program Act of 2000.

The facts and documents essential to the resolution of this issue are stipulated by the parties pursuant to the Joint Statement of Facts (Stipulations) filed on June 2, 2004. Additionally, the court takes judicial notice of certain undisputed facts and documents of record in the Debtor's bankruptcy case file. See FED. R. EVID. 201. The Debtor's Brief in Opposition to Objection to Exemption by Trustee was filed on June 14, 2004, and the Brief of Trustee in Support of Objection to Claimed Exemptions was filed on June 15, 2004. The parties agree that the court may resolve this contested matter on the Stipulations and briefs and that an evidentiary hearing is not required.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

### I

The Debtor is sixty-four years old and has been a resident of Tennessee her entire life. She is the widow of Roy Lee Luttrell, who was an employee with the Department of Energy. The Debtor is disabled, and during the time of their marriage, she was the dependent of Mr. Luttrell. Mr. Luttrell, who died on July 15, 1989, after battling lung cancer, was a "covered employee" under the Energy Employees Occupational Illness Compensation Program Act of 2000 (EEOICPA), through which Congress established a compensation program for employees of the Department of Energy. See generally 42 U.S.C.A. § 7384 (West 2004).[1] The purpose for establishing the compensation program was codified as follows:

(b) Purpose of program

The purpose of the compensation program is to provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors.

42 U.S.C.A. § 7384d(b). Under the terms of the EEOICPA, "a covered employee, or the survivor of that covered employee if the employee is deceased, shall receive compensation for the disability or death of that employee from the employee's occupational illness in the amount of $150,000.00." 42 U.S.C.A. § 7384s(a)(1). When the "covered employee" is deceased and survived by a spouse, the surviving spouse is the party to whom the compensation becomes payable. 42 U.S.C.A. § 7384s(e)(1)(A).

On January 3, 2002, the Debtor submitted a claim to the United States Depart-

---

1. Under the EEOICPA, "covered employees" include those with cancer. 42 U.S.C.A. § 7384l (B); 20 C.F.R. 30.5(dd)(2) (2004).

ment of Labor, claiming entitlement to benefits under the EEOICPA. On November 20, 2003, she received a letter from the Department of Labor Office of Workers' Compensation Programs, along with Findings of Fact and Conclusions of Law, a Notice of Recommended Decision, and a NIOSH Report of Dose Reconstruction under the Energy Employees Occupational Illness Compensation Program Act (EEOICPA). *See* STIPS. EX. A. As reflected in these documents, the Department of Labor found that Mr. Luttrell's employment with the Department of Energy was the cause of his cancer, and that the Debtor, as his surviving spouse, was entitled to receive benefits under the EEOICPA in the amount of $150,000.00.

Prior to receiving the Department of Labor's decision, the Debtor filed the Voluntary Petition commencing her bankruptcy case under Chapter 7 of the Bankruptcy Code on August 30, 2002. In her original statements and schedules filed on August 30, 2002, the Debtor listed as personal property, subject to exemption, a "class action lawsuit against Nuclear Materials of Oak Ridge, Tennessee worksite," which she valued as "unknown." On October 28, 2003, the Debtor filed an Amendment to Schedule B & C, valuing the "class action lawsuit" at $150,000.00, and claiming it partially exempt in the amount of $7,500.00 pursuant to Tennessee Code Annotated section 26–2–111(2)(B) (2001 & Supp.2003) and fully exempt pursuant to Tennessee Code Annotated section 50–6–223 (1999). The Trustee filed an Objection to Debtors' [sic] Claim of Exemption on November 13, 2003, stating that the Debtor could not rely upon section 50–6–223 because the "class action lawsuit" was federal, not state. Additionally, the Trustee objected to the Debtor's exemption because she was

not the original claimant but the beneficiary.

After receiving the November 20, 2003 determination from the Department of Labor, the Debtor filed the Second Amendment to Schedule B and C on December 5, 2003, in which she disclosed as personal property the $150,000.00 benefits to be paid under the EEOICPA, which she had previously referred to as the "class action lawsuit." The Debtor again claimed that the benefits were partially exempt in the amount of $7,500.00 under Tennessee Code Annotated section 26–2–111(2)(B) and fully exempt under Tennessee Code Annotated section 26–2–111(1)(c) (2001 & Supp.2003).

The Debtor ultimately received payment of the $150,000.00 on March 1, 2004, and on April 23, 2004, she filed her Third Amendment to Schedule C, in which she claimed that she is entitled to exempt the entire EEOICPA benefits of $150,000.00 under Tennessee Code Annotated section 26–2–111, under 5 U.S.C.A. § 8130 (West 1996), and under 11 U.S.C.A. § 522(d)(10) and (11) (West 1993 & Supp.2004). The Trustee renewed her Objection on May 10, 2004. On June 1, 2004, the Debtor filed an Amended Schedule I—Current Income of Individual Debtor and an Amended Schedule J—Current Expenditures of Individual Debtor, evidencing monthly income in the amount of $1,270.64 and monthly expenses of $1,872.30, respectively. *See* STIPS. EX. B.

The parties do not dispute that at the time she filed her bankruptcy case, the Debtor had the right to receive the $150,000.00 benefits under the EEOICPA, which are property of her bankruptcy estate if not exempt. Pending resolution of this contested matter, the parties have set aside $30,000.00 in a Trust Account.[2] Pursuant to their Stipulations, Tennessee

---

2. Although the parties stipulate that the Debtor has received the $150,000.00, they make no mention of the status of the remaining $120,000.00.

Code Annotated section 26–2–111(1)(c) and/or (3) provide the only statutory basis for the Debtor's claimed exemption.

## II

▉ Upon the filing of a bankruptcy petition, the bankruptcy estate is formed, and all property owned by the debtor becomes property thereof. *See* 11 U.S.C.A. § 541 (West 1993). Nevertheless, debtors may exempt property pursuant to 11 U.S.C.A. § 522, which provides, in material part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place[.]

11 U.S.C.A. § 522 (West 1993 & Supp. 2004); *see also* FED. R. BANKR. P. 4003.[3] Property that is exempted "is subtracted from the bankruptcy estate and not distributed to creditors ... [to ensure that the debtor] retains sufficient property to

obtain a fresh start[.]" *In re Arwood,* 289 B.R. 889, 892 (Bankr.E.D.Tenn.2003) (quoting *Lawrence v. Jahn (In re Lawrence),* 219 B.R. 786, 792 (E.D.Tenn.1998)). Accordingly, exemptions are liberally construed in favor of debtors. *In re Nipper,* 243 B.R. 33, 35 (Bankr.E.D.Tenn.1999). As with property of the estate, a debtor's exemptions are determined as of the date upon which the bankruptcy case commenced. *See* 11 U.S.C.A. § 522(b).

▉ Section 522 allows states to "opt out" of the federal exemptions enumerated in § 522(d) and use their own. *Arwood,* 289 B.R. at 892. Pursuant to Tennessee Code Annotated section 26–2–112, Tennessee has "opted out" of the federal exemptions:

**Exemptions for the purpose of bankruptcy.**—The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95–598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522(d).

TENN. CODE ANN. § 26–2–112 (2000); *see also Rhodes v. Stewart,* 705 F.2d 159, 161–62 (6th Cir.1983) (finding Tennessee's "opt-out" statute is constitutional); *Arwood,* 289 B.R. at 892.

The Debtor contends that she is entitled to exempt the entire $150,000.00 EEOIC-PA benefits received pursuant to Tennes-

---

3. Any party in interest may object, in writing, to a debtor's claimed exemptions pursuant to Federal Rule of Bankruptcy Procedure 4003(b). Additionally, the objecting party bears the burden of proving that the debtor's exemptions are improperly claimed. FED. R. BANKR. P. 4003(c).

see Code Annotated section 26–2–111, which provides, in material part:

**Additional exemptions—Certain benefit payments—** ... In addition to the property exempt under § 26–2–103, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

(1) The debtor's right to receive:

. . . .

(C) A disability, illness, or unemployment benefit, or a pension that vests as a result of disability; [and]

. . . .

(3) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

TENN. CODE ANN. § 26–2–111.[4]

Pursuant to this statute, in conjunction with the EEOICPA and § 522 of the Bankruptcy Code, there appears to be no dispute between the parties that if Mr. Luttrell were the debtor claiming the $150,000.00 compensation, it would be fully exempt under section 26–2–111(1)(C). However, the Trustee argues that section 26–2–111(1)(C) applies only when the debtor seeking to claim the exemption is the party that suffered the disability, illness, or unemployment for which he is being compensated. In support of her argument, the Trustee looks to other subsections of 26–2–111, including subsection (3) alternatively relied upon by the Debtor, that expressly state that a dependent of the debtor may claim the exemption.

The court disagrees with the Trustee's interpretation of section 26–2–111(1)(C) and finds that the Debtor is entitled to exempt the $150,000.00 benefits received pursuant to the EEOICPA in its entirety. Specifically relied upon by the Trustee as evidence that the Tennessee General Assembly did not intend to allow dependents to claim disability, illness, or unemployment benefits as exempt are subsections (2) and (3). The court acknowledges that these subsections expressly state that a debtor may claim certain benefits as exemptions, as long as they depend or depended upon the individual that incurred the benefits for support. *See* TENN. CODE ANN. § 26–2–111(2)(A) (including an award under a crime victim's reparation law); TENN. CODE ANN. § 26–2–111(2)(B) (including an award for bodily injury to the debtor or his dependent); TENN. CODE ANN. § 26–2–111(2)(C) (including an award for wrongful death of someone that supported the debtor); TENN. CODE ANN. § 26–2–111(3) (including an award for the debtor's future earnings or those of someone upon whom the debtor depended for support). Nevertheless, each of these subsections also appear to address the right to receive compensation or property awarded by a court to right a wrong incurred by virtue of a crime, an intentional tort, or negligence by a third party.

In contrast, the types of interests falling within the scope of section 26–2–111(1) include social security benefits, unemployment compensation, veterans' benefits, certain pensions, alimony, and child support, in addition to the disability, illness, or unemployment benefits at issue in this case. *See* TENN. CODE ANN. § 26–2–111(1)(A) through (F). It appears to the court that this section includes primarily

---

**4.** The language of section 26–2–111(1)(C) and (3) mirrors that found in 11 U.S.C.A. § 522(d)(10)(C) and (11)(E).

benefits that accrue under statutory law. Additionally, both social security and veterans' benefits are vested in an individual's survivors upon the death of that individual, by virtue of the respective statutes. *See, e.g.,* 42 U.S.C.A. § 405 (West 2003 & Supp.2004)(social security death and disability benefits); 38 U.S.C.A. § 1102 (West 2002) (veterans' benefits).

Likewise, the EEOICPA vests a surviving spouse with the immediate right to receive the benefits if the "covered employee" is deceased but would otherwise have satisfied all other criteria to receive the benefits. *See* 42 U.S.C.A. § 7384s(e)(1)(A). The EEOICPA does not allow just any "dependent" to receive the benefits, but instead, reserves the right to the "covered employee's survivors," with the preference being to any surviving spouse. *See* 42 U.S.C.A. § 7384s; 20 C.F.R. 30.500 (2004) (defining survivors for the purpose of the compensation fund). Moreover, the benefits under the EEOICPA is not granted to "covered employees" or their survivors because of their deaths, but rather, because of the illnesses that they have incurred as a result of their exposure to hazardous chemicals and materials in connection with their employment with the Department of Energy.

The EEOICPA was enacted after Congress made the following findings:

(1) Since World War II, Federal nuclear activities have been explicitly recognized under Federal law as activities that are ultra-hazardous. Nuclear weapons production and testing have involved unique dangers, including potential catastrophic nuclear accidents that private insurance carriers have not covered and recurring exposures to radioactive substances and beryllium that, even in small amounts, can cause medical harm.

(2) Since the inception of the nuclear weapons program and for several decades afterwards, a large number of nuclear weapons workers at sites of the Department of Energy and at sites of vendors who supplied the Cold War effort were put at risk without their knowledge and consent for reasons that, documents reveal, were driven by fears of adverse publicity, liability, and employee demands for hazardous duty pay.

. . . .

(4) The policy of the Department of Energy has been to litigate occupational illness claims, which has deterred workers from filing workers' compensation claims and has imposed major financial burdens for such employees who have sought compensation. Contractors of the Department [of Energy] have been held harmless and the employees have been denied workers' compensation coverage for occupational disease.

(5) Over the past 20 years, more than two dozen scientific findings have emerged that indicate that certain of such employees are experiencing increased risks of dying from cancer and non-malignant diseases. Several of these studies have also established a correlation between excess diseases and exposure to radiation and beryllium.

(6) While linking exposure to occupational hazards with the development of occupational disease is sometimes difficult, ... studies indicate than [sic] 98 percent of radiation-induced cancers within the nuclear weapons complex have occurred at dose levels below existing maximum safe thresholds.

(7) Existing information indicates that State workers' compensation programs do not provide a uniform means of ensuring adequate compensation for the types of occupational illnesses and diseases that relate to the employees of those sites.

(8) To ensure fairness and equity, the civilian men and women who, over the past 50 years, have performed duties uniquely related to the nuclear weapons production and testing programs of the Department of Energy and its predecessor agencies should have efficient, uniform, and adequate compensation for beryllium-related health conditions and radiation-related health conditions.

42 U.S.C.A. § 7384(a). Additionally, payment under the EEOICPA does not prevent a "covered employee" from seeking to recover workers' compensation benefits under state law. *See* 42 U.S.C.A. § 7385h (West 2004). Instead, it is a one-time governmental benefit intended to compensate employees of the Department of Energy for their years of exposure to hazardous working conditions, many times without their knowledge.

These Congressional findings buttress the court's belief that the $150,000.00 payment received by the Debtor, as surviving spouse of Mr. Luttrell, was precisely within the scope of protections intended by the Tennessee General Assembly when it enacted section 26–2–111(1)(C). The EEOICPA expressly states that it was enacted to compensate employees of the Department of Energy for their disabilities and occupational illnesses. Additionally, it fully vests in a surviving spouse the right to receive payment of the benefits if the "covered employee" is deceased, as if the surviving spouse is actually the "covered employee." Furthermore, included within the ambit of section 26–2–111(1) are other types of benefits that automatically vest payment in surviving spouses and/or children, such as social security and veterans' benefits. The types of awards addressed in subsections (2) and (3) of section 26–2–111 are, in the court's mind, dissimilar and do not provide a basis for the Trustee's Objection.

In summary, the Trustee's Objection to the Debtor's Third Amendment to Schedule C shall be overruled. Tennessee Code Annotated section 26–2–111(1)(c) entitles the Debtor to exempt the entire $150,000.00 benefits received under the EEOICPA. The court need not consider the Debtor's claimed exemption under Tennessee Code Annotated section 26–2–111(3).

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons stated in the Memorandum on Objection to Debtor's Claimed Exemption filed this date, the court directs the following:

1. The Objection to Debtors' [sic] Claim of Exemption filed by the Chapter 7 Trustee, Ann Mostoller, on May 10, 2004, is OVERRULED.

2. The Debtor's Third Amendment to Schedule C, wherein the Debtor claims an exemption under Tennessee Code Annotated section 26–2–111(1) in "Benefits Paid to Debtor as a Result of the Energy Employees Occupational Illness Compensation Program Act of 2000," is allowed.

SO ORDERED.